**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **JOSEPH J. BARTON,**<br><br>Plaintiff,<br><br>v.<br><br>**TOWN OF WHITEFIELD, NEW HAMPSHIRE,** et al.,<br><br>Defendants. | No. 1:25-cv-00451-LM-TSM |

# PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

Plaintiff Joseph J. Barton respectfully submits this Supplemental Brief in support of his Motion for Preliminary Injunction (Doc. No. 4) to address newly disclosed evidence produced by SAU 36 in response to Plaintiff's Right-to-Know request. The district's own records materially strengthen the grounds for injunctive relief and confirm that the October 24, 2025 no-trespass order was not supported by a documented safety incident, was imposed without procedural safeguards, and was issued in close temporal proximity to Plaintiff's protected petitioning and advocacy activities.

The newly produced documents show that Defendants discussed drafting and serving the no-trespass order before any investigation or neutral fact-finding occurred, relied on incomplete and unverified materials, and bypassed School Board review or any adjudicative process. These actions occurred in close temporal proximity to Plaintiff's complaint to the New Hampshire Department of Transportation and his anticipated participation in a School Board meeting.

This supplemental evidence does not alter the governing legal framework but reinforces the constitutional deficiencies previously identified and confirms that Plaintiff continues to satisfy the requirements for injunctive relief.

## TABLE OF CONTENTS


Introduction……………………………………………………………………………………3
I. Newly Disclosed Documents Confirm No Basis for the Trespass Order ……………………5
II. Principal Plumley's Email Contradicts the District's Asserted Safety Concerns ……………5
III. The District Relied on an Unsigned, Undated, Unauthored Paraprofessional Statement ……6
IV. Officer Laska's "*I Provided My Own*" Statement Was Not Produced ……………………7
V. The District Omitted "*Attached Documentation*" Referenced in Multiple Emails ……………7
VI. The District Has No "*Established Safety Rules*" That Plaintiff Violated ……………………8
VII. Retaliation for Recording — A Protected First Amendment Activity ……………………8
VIII. NH DOT's Response Confirms the Dispute Concerned Traffic Control Not Criminal or Safety Enforcement ……………………………………………………………9
IX. Constitutional Deficiencies in the Record ………………………………………………10
A. Retaliatory Animus ………………………………………………………………10
B. Joint Action With Law Enforcement ……………………………………………10
C. Failure to Provide Due Process Required Under Ed 204.01 …………………………11
D. Pretext . ……………………………………………………………………………11
E. The District's Decision-Making Was Intertwined With Plaintiff's Protected
F. No-Trespass Order Issued Without Board Review or Adjudicative Process…..13
G. Possession of External Request for Review ………………………………………13
H. Fabricated Restrictions Not Found in Any Rule or Policy ………………………… 14
I. Misuse of RSA 635:2 to Enforce an Unlawful and Retaliatory Exclusion.........15
X. Relevant Holdings ……………………………………………………………………17
XI. Plaintiff Continues to Satisfy the Preliminary Injunction Standard ……………………20
1. Likelihood of Success on the Merits…………………………………………………20
2. Irreparable Harm ……………………………………………………………………21
3. Balance of Equities …………………………………………………………………21
4. Public Interest ………………………………………………………………………21
5. Relief Is Narrow and Appropriat ……………………………………………………21
XII. Table of Exhibits ……………………………………………………………………23
XIII. CONCLUSION ………………………………………………………………………24
CERTIFICATE OF SERVICE ……………………………………………………………… 25

## TABLE OF AUTHORITIES

CASES

Bryan v. Fawkes,

61 F. Supp. 3d 177 (D.V.I. 2014) .......... 6,17

City of Houston v. Hill,

482 U.S. 451 (1987) .......... 16, 19

Gericke v. Begin,

753 F.3d 1 (1st Cir. 2014) .......... 8, 18

Glik v. Cunniffe,

655 F.3d 78 (1st Cir. 2011) .......... 8, 18

Grayned v. City of Rockford,

408 U.S. 104 (1972) .......... 8, 15,19

Halsey v. Pfeiffer,

750 F.3d 273 (3d Cir. 2014) .......... 6,17

Lane v. Franks,

573 U.S. 228 (2014) .......... 8, 18

Lozman v. City of Riviera Beach,

585 U.S. 108 (2018) .......... 5, 17

Lugar v. Edmondson Oil Co.,

457 U.S. 922 (1982) .......... 10, 20

Project Veritas Action Fund v. Rollins,

982 F.3d 813 (1st Cir. 2020) .......... 8,18

Surita v. Hyde,

665 F.3d 860 (7th Cir. 2011) .......... 16, 19

<u>STATUTES & REGULATIONS</u>

NH RSA 91-A (New Hampshire Right-to-Know Law) ..................................................... passim

NH RSA 635:2 (Criminal Trespass) .....................................................................15-16,20

Ed 204.01 (NH Administrative Rules – Hearings) ............................................................ 11-13

<u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. amend. I ........................................................................................................ passim

U.S. Const. amend. XIV ................................................................................................... passim

## I. NEWLY DISCLOSED FACTS SHOW THE DISTRICT HAD NO BASIS FOR THE TRESPASS ORDER

The records provided by SAU 36 reveal:

- **No reported safety incident**,
- **No policy violation**,
- **No investigation**, and
- **No contemporaneous justification.**

The timing of events remains compelling. On October 23, 2025, Defendants discussed Plaintiff's anticipated attendance at the School Board meeting (**Ex T**, **at T0030)**. That same chain shows the trespass order was being finalized: .

> *"I saw the statements and provided my own. I think we are good to go. Once drafted and signed I will send it off to Littleton PD to be served."* **(Ex T, at T0030)**.

Earlier that day, Superintendent Anastasia wrote:

> *"So, what exactly do you want our attorney to draft? The entire trespass notice…"*
>
> **(Ex T, at T0023)**.

The order was issued the next day—October 24. The proximity supports an inference of First Amendment retaliation. Lozman v. Riviera Beach, 585 U.S. 108 (2018).

## II. PRINCIPAL PLUMLEY'S EMAIL DIRECTLY CONTRADICTS THE DISTRICT'S POSITION

Among the most significant new documents is an email from Principal Sharal Plumley approving that Plaintiff should be allowed to:

> *"...get out of his vehicle to help his daughter."* **(Ex T, at T0080)**

This contemporaneous recommendation confirms that:

• Plaintiff posed **no safety concern**,

• Plaintiff's conduct was **normal parental assistance**, and

• The Staff directly involved in student dismissal considered Plaintiff's presence appropriate.

The no-trespass order's prohibition on Plaintiff exiting his vehicle directly contradicts this internal assessment. Such contradictions are evidence of **pretext.**

See *Bryan v. Fawkes*, 61 F. Supp. 3d 177 (D.V.I. 2014).

## III. THE DISTRICT RELIED ON AN UNSIGNED, UNDATED, UNAUTHORED STATEMENT FROM A "*PARAPROFESSIONAL*"

The district's production includes an unsigned and undated narrative attributed vaguely to "*a paraprofessional.*"

This document at (**Ex T, at T0121)** contains:

• no author,

• no signature,

• no date,

• no indication of personal knowledge.

The district also withheld the paraprofessional's identity, despite the narrative appears to originate from an individual with an undisclosed personal relationship to Plaintiff's child — a fact that presents an obvious conflict of interest.

Documents lacking basic indicia of reliability cannot justify restrictions on constitutional rights.

See ***Halsey v. Pfeiffer***, 750 F.3d 273 (3d Cir. 2014).

## IV. OFFICER LASKA'S "*I PROVIDED MY OWN*" STATEMENT WAS NOT PRODUCED AND APPEARS UNFOUNDED

The email chain shows Officer Michael Laska wrote:

> *"I saw the statements and provided my own."* **(Ex T, at T0030)**

However:

- No such statement was produced,
- No exemption was cited,
- And Officer Laska had no firsthand knowledge of any alleged conduct.

Reliance on statements from individuals with no personal knowledge violates due process and further demonstrates the absence of any factual basis for the order.

## V. THE DISTRICT OMITTED "ATTACHED DOCUMENTATION" REFERENCED IN STAFF EMAILS

Several emails on (**Ex T, at T0013, T0016, T0022-T0023, T0030, T0054-T0055, T0060-T0061)** reference "*attached documentation,*" but **no such attachments** were included. RSA 91-A requires disclosure of attachments to public records.

Failure to produce referenced attachments without identifying an exemption strongly suggests:

- selective withholding,
- post-hoc justification, or
- improper record handling.

Missing attachments are routinely treated by courts as indicators of bad faith. The repeated references to attachments that were not produced—despite no claimed exemption under RSA 91-A suggests either that no such documentation existed, or that Defendants are selectively withholding exculpatory material

## VI. THE DISTRICT HAS NO "*ESTABLISHED SAFETY RULES*" SUPPORTING ITS POSITION

Despite asserting Plaintiff violated *"established safety rules,"* SAU 36 has produced:

- no written rules,
- no parent notifications,
- no signage,
- no guidance documents.

The absence of any such rules violates the fundamental due-process requirement of **fair notice**. See ***Grayned v. City of Rockford***, 408 U.S. 104 (1972).

## VII. THE DISTRICT RETALIATED AGAINST PLAINTIFF FOR RECORDING, A CLEARLY PROTECTED FIRST AMENDMENT ACTIVITY

Staff complained that Plaintiff recorded traffic safety patterns. **(Ex T, at T0022-T0025)**. The district's documents reflect concerns raised by staff about Plaintiff's **recording of traffic safety conditions**, a matter of public concern. Recording government officials—including school employees and law enforcement—in publicly accessible areas is clearly protected First Amendment activity. Plaintiff recorded peacefully, outdoors, on matters of student safety—core protected speech. Lane v. Franks, 573 U.S. 228 (2014). See ***Glik v. Cunniffe***, 655 F.3d 78 (1st Cir. 2011) (affirming unambiguous right to record police); ***Gericke v. Begin***, 753 F.3d 1 (1st Cir. 2014); ***Project Veritas Action Fund*** *v. Rollins*, 982 F.3d 813 (1st Cir. 2020).

Plaintiff's recordings were peaceful, conducted outdoors, and directly related to student safety—speech entitled to the highest constitutional protection. ***Lane v. Franks***, 573 U.S. 228 (2014). The district's negative characterization of these recordings, and its use of them as part of its

rationale for exclusion, demonstrates improper motive and further strengthens Plaintiff's First Amendment retaliation claim.

Any adverse action taken in response to protected recording activity is unconstitutional. The timing and content of the district's communications show that Plaintiff's recordings were improperly treated as suspicious or problematic, when in fact they were lawful, protected, and aimed at addressing school-safety concerns.

## VIII. NHDOT's RESPONSE CONFIRMS THE DISPUTE CONCERNED TRAFFIC CONTROL NOT CRIMINAL OR SAFETY ENFORCEMENT

The newly produced record shows that Plaintiff's communications with the New Hampshire Department of Transportation (NHDOT) concerned traffic control authority and crosswalk safety—not criminal conduct, threats, or school security enforcement. In response to Plaintiff's inquiry, NHDOT addressed whether the crosswalk and traffic control measures at Whitefield Elementary School complied with applicable transportation standards and statutory authority. **(Ex. T at T0061–T0064.)**

Notably, NHDOT's correspondence does not identify any criminal conduct, threats, or enforcement action involving Plaintiff. Nor does it suggest that the matter presented a public safety emergency or required intervention by law enforcement. Instead, the exchange reflects a regulatory and administrative discussion regarding roadway design, signage, and the scope of authority for traffic control near school property. **(Ex. T at T0061–T0064.)**

This context is significant. Defendants later characterized the situation as a safety-based justification for excluding Plaintiff from school property and enforcing that exclusion through criminal trespass. The NHDOT response—issued after review of the circumstances—confirms that the underlying dispute fell squarely within the realm of traffic and infrastructure regulation, not criminal or security concerns. **(Ex. T at T0061–T0064.)**

The absence of any criminal or enforcement finding by NHDOT further undermines Defendants' claim that the no-trespass order was necessary to address an imminent safety risk. Instead, the record reflects a disagreement over traffic control practices that was subsequently transformed into an exclusionary sanction imposed without process.

## IX. CONSTITUTIONAL DEFICIENCIES REVEALED IN THE RECORD

### A. Retaliatory Animus

Taken together, the newly disclosed records establish a pattern of retaliatory motive, procedural bypass, and ad-hoc enforcement that violates both the First and Fourteenth Amendments. Emails show irritation with Plaintiff's protected activities. (**Ex T at T0022-T0025, & T0030**).

### B. Joint Action With Law Enforcement

Superintendent Anastasia, Principal Plumley, staff, the paraprofessional, and Officer Laska coordinated the action. This is joint action under §1983. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

C. Failure to Provide Due Process Under Ed 204.01

Even where officials assert safety concerns, due process requires at least a prompt and meaningful opportunity to be heard, which was wholly absent here. SAU 36 provided:

- no notice,
- no hearing,
- no opportunity to respond,
- no cited authority.

D. Pretext

The newly disclosed record demonstrates that Defendants' asserted safety rationale for the no-trespass order is pretextual. The documents contain no contemporaneous report of a safety incident, no investigation, no findings, and no reference to any written rule or policy allegedly violated by Plaintiff. Instead, the record reflects internal discussions about drafting and serving the order before any neutral fact finding occurred. **(Ex. T at T0023–T0035.)**

Defendants' reliance on staff statements does not cure this defect. One statement is unsigned and undated, and neither alleges a threat, physical interference, refusal to comply with instructions, or disruption of school operations. **(Ex. T at T0019, T0120.)** The only articulated concerns are subjective discomfort and generalized unease, which are insufficient to justify exclusion from public property or enforcement through criminal trespass. No effort was made to corroborate these assertions or to pursue less restrictive alternatives.

The pretextual nature of the order is further confirmed by material omissions in

the record. Emails reference "attached documentation" that was never produced, and a police officer's asserted supporting statement ("I provided my own") is referenced but absent from the production. **(Ex. T at T0029–T0035.)** These gaps undermine

Defendants' claim that the order rested on a complete or reliable factual record. The record establishes a tell-tale sequence: Defendants learned of Plaintiff's DOT complaint and anticipated School Board attendance on October 23; that same day discussed drafting the order with counsel; and issued it October 24—all without any intervening incident, investigation, or documented safety concern.

Taken together, the absence of a documented safety basis, the reliance on unverified and incomplete materials, and the timing of the decision relative to Plaintiff's protected activity establish that the stated safety justification was not the true reason for the exclusion, but a post-hoc rationale for an action already decided upon.

E. <u>The District's Decision-Making Was Intertwined With Plaintiff's Protected DOT Complaint</u>

The internal email record reveals that Plaintiff's written inquiry and complaint to the New Hampshire Department of Transportation regarding pedestrian safety and crosswalk authority was repeatedly embedded verbatim within multiple internal email chains concerning whether, how, and when to issue a no-trespass order against him. Rather than appearing as a discrete or unrelated communication, Plaintiff's DOT inquiry circulated contemporaneously within the same threads in which Defendants debated drafting parameters, service logistics, and coordination with law enforcement. No intervening safety incident, investigation, or policy violation appears in the record

between the circulation of Plaintiff's DOT complaint and the issuance of the no-trespass order.

The repeated inclusion of Plaintiff's DOT complaint within the trespass-planning communications demonstrates that his protected petitioning activity was not merely known to Defendants, but was actively present during their decision-making process. This record evidence undermines any claim that the trespass order was based on independent or contemporaneous safety concerns and instead supports an inference of retaliatory motive.

F. No-Trespass Order Issued Without Board Review or Adjudicative Process

Equally significant is what the record does not show. Although the no-trespass order excluded Plaintiff from public school property and materially affected his parental rights, no School Board member was copied on, consulted in, or otherwise involved in the email threads discussing whether to trespass Plaintiff, what restrictions to impose, or when the order would be served. The internal communications reflect that the decision was made entirely by administrators and law-enforcement personnel, without School Board review, without notice, and without any opportunity for Plaintiff to be heard.

The absence of School Board involvement confirms that the exclusionary decision was not the result of any established policy, formal adjudication, or hearing process, but rather an ad-hoc administrative action. This procedural bypass further demonstrates the lack of due process required under Ed 204.01 and reinforces the conclusion that the order was imposed without lawful authority.

G. The Missing Internal Transmission of Plaintiff's Request for Review Further Undermines the District's Asserted Justifications

Exhibit T includes Plaintiff's written Request for Review dated October 25, 2025. Plaintiff transmitted that request to Superintendent Marion Anastasia and other district officials, including Michael Cronin. Plaintiff did not transmit the request to Principal Sharal Plumley. (Ex. T at T0055.)

Nevertheless, the production reflects that Principal Plumley possessed the Request for Review and later transmitted it to a third party. The record therefore necessarily implies the existence of an internal district communication transmitting Plaintiff's Request for Review from one of the district officials who received it to Principal Plumley. No such internal transmission appears in the production.

The absence of this internal communication is notable given that the production includes extensive email correspondence among the same officials during the same time period. This omission further undermines Defendants' assertion that the no-trespass decision was based on a complete and reliable factual record and reinforces the inference that Plaintiff's efforts to seek review were known internally but not addressed through any formal process.

H. Fabricated Restrictions Not Found in Any Rule, Policy, or Lawful Order

The restrictions imposed on Plaintiff — including the prohibition that he "*shall not exit his vehicle*" while on school grounds — do not appear in any written statute, regulation, school board policy, parent handbook, or formally adopted safety rule. The record contains no evidence that such restrictions were ever promulgated, noticed to parents, or

adopted by the School Board prior to their enforcement against Plaintiff.

Instead, these restrictions appear only in an unsigned, undated "*Addendum to the Attached No-Trespass Order,*" drafted internally after administrators and law enforcement had already decided to exclude Plaintiff. No authority is cited for these conditions, and no explanation is provided as to how they were derived or why they were necessary. The internal emails further confirm that the restrictions were proposed ad hoc during drafting discussions, not derived from any preexisting rule or policy.

The absence of any lawful source for these restrictions violates the fundamental due-process requirement that individuals receive fair notice of prohibited conduct before being punished for it. Government actors may not invent behavioral prohibitions on the fly and enforce them through exclusionary orders, particularly where the restrictions burden parental rights and protected First Amendment activity. See *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

I. <u>Misuse of RSA 635:2 to Enforce an Unlawful and Retaliatory Exclusion</u>

Defendants relied on RSA 635:2 (criminal trespass) as the enforcement mechanism for Plaintiff's exclusion from Whitefield Elementary School property. That statute, however, does not authorize government actors to impose ad-hoc behavioral restrictions, nor may it be used to criminalize constitutionally protected conduct or to enforce exclusions imposed without lawful authority.

The record reflects no allegation that Plaintiff refused a lawful order to leave, interfered with school operations, threatened staff or students, or engaged in any conduct that would satisfy the elements of criminal trespass. Instead, the no-trespass order was

drafted internally in advance, served through law enforcement, and enforced as a punitive response to Plaintiff's parental advocacy, recording activity, and external complaints to state authorities.

Courts have repeatedly held that trespass statutes may not be used as a pretext to suppress protected speech or to exclude individuals from public property for retaliatory or viewpoint-based reasons. See *Surita v. Hyde*, 665 F.3d 860, 869–70 (7th Cir. 2011) (use of trespass law to exclude speaker based on speech violates First Amendment); *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987) (government may not punish speech that merely annoys or makes officials uncomfortable).

The absence of any underlying crime, investigation, or contemporaneous safety incident confirms that RSA 635:2 was not applied as a neutral law-enforcement tool, but rather as an enforcement vehicle for an exclusion that lacked legitimacy. This violates due process and further supports Plaintiff's likelihood of success on the merits.

## X. RELEVANT HOLDINGS

**1. Lozman v. Riviera Beach, 585 U.S. 108 (2018)**

**Holding:** Government cannot use official powers to retaliate against individuals for protected speech, especially when timing and animus reveal an improper motive.

**Relevance:** Defendants discussed drafting the no-trespass order on October 23, 2025—the same day they learned Plaintiff planned to attend the School Board meeting. (**Exhibit T, T0023, T0030).** The proximity between Plaintiff's protected activity and the punitive action strongly supports retaliatory motive under *Lozman*.

**2. Bryan v. Fawkes, 61 F. Supp. 3d 177 (D.V.I. 2014)**

**Holding:** Internal inconsistencies and contradictions in government explanations constitute evidence of pretext.

**Relevance:** Internal emails show Principal Plumley believed Plaintiff *should* exit his vehicle to assist his daughter, contradicting the Addendum's prohibition (**Ex T, at T0054)**. The district framed the order as a safety measure, while internally acknowledging no safety concerns.

**3. Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014)**

**Holding:** Government reliance on fabricated, unsigned, undated, or unverified statements violates due process.

**Relevance:** The paraprofessional narrative (**Ex T, at T0120**) is unsigned, undated, unauthored, and from a party with an undisclosed personal conflict. Such material cannot justify limiting constitutional rights.

**4. Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011)**

**Holding:** Recording public officials in public spaces is a First Amendment right.

**Relevance:** Plaintiff recorded safety concerns in open areas of school property. Staff complaints **(Ex T, at T0022-T0025)** cannot lawfully justify an adverse action.

**5. Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014)**

**Holding:** First Amendment protection includes recording law enforcement even during traffic stops, barring interference.

**Relevance:** Plaintiff's recording was peaceful, non-interfering, and related to student safety—well within the protection articulated in *Gericke*.

**6. Project Veritas Action Fund v. Rollins, 982 F.3d 813 (1st Cir. 2020)**

**Holding:** Even unpopular or disfavored recording is constitutionally protected absent a narrowly tailored, compelling governmental interest.

**Relevance:** The district's dislike of Plaintiff's recording does not constitute a compelling interest and was not coupled with any narrow restriction, instead the district imposed the most extreme measure: total exclusion.

**7. Lane v. Franks, 573 U.S. 228 (2014)**

**Holding:** Speech addressing matters of public concern receives heightened First Amendment protection.

**Relevance:** Plaintiff raised **student safety concerns**, one of the most important categories of public concern speech. Retaliation in this context is especially disfavored.

**8. Grayned v. City of Rockford, 408 U.S. 104 (1972)**

**Holding:** Government may not punish individuals under vague or nonexistent rules; due process requires clear notice of prohibited conduct.

**Relevance:** SAU 36 produced **no written safety rules**, guidelines, signage, or policies that Plaintiff allegedly violated. The "vehicle exit" restriction appears nowhere except in an unsigned addendum (**Ex T, at T0006**).

**9. Surita v. Hyde, 665 F.3d 860 (7th Cir. 2011)**

**Holding:** Trespass statutes may not be used to suppress protected expression or exclude speakers from public property for speech-based reasons.

**Relevance:** The district used RSA 635:2 to exclude Plaintiff from public school grounds following protected recording and anticipated public comment. This falls squarely within the misuse described in *Surita*.

**10. City of Houston v. Hill, 482 U.S. 451 (1987)**

**Holding:** Government cannot punish speech that merely annoys, offends, or makes officials uncomfortable.

**Relevance:** Staff reported that Plaintiff's recording "made people uncomfortable" (**Ex T, at T0022-T0025**). Discomfort is not a legal basis for restricting speech or excluding a parent from school property.

**11. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)**

**Holding:** When private or quasi-private actors jointly participate with government officials in unconstitutional conduct, all such parties act "under color of state law" for purposes of §1983.

**Relevance:** The email record shows coordinated planning between SAU 36 administrators and Officer Laska regarding the issuance and service of the no-trespass order. (**Ex T, at T0030**) This establishes joint action and §1983 state-action liability.

## XI. PLAINTIFF CONTINUES TO SATISFY THE PRELIMINARY INJUNCTION STANDARD

1. Likelihood of Success – The new evidence reveals pretext, lack of factual basis, and retaliatory motive, confirming that Defendants' no-trespass order was not the product of any neutral safety determination or established policy. Internal emails show that Defendants discussed drafting and serving the order contemporaneously with Plaintiff's protected petitioning activity, including his complaint to the New Hampshire Department of Transportation and anticipated attendance at a School Board meeting, while no intervening safety incident, investigation, or policy violation appears in the record. (Ex. T at T0020–T0035.) The documents further establish that the exclusionary decision was made without School Board involvement, notice, or opportunity for hearing, despite its impact on Plaintiff's parental rights. **(Ex. T at T0023–T0035, T0053–T0054.)** Defendants nonetheless enforced the order through **RSA 635:2** despite the absence of any allegation that Plaintiff committed a crime or refused a lawful order. **(Ex. T at T0061–T0064.)** This evidence strengthens Plaintiff's likelihood of success on his First and Fourteenth Amendment claims.

**2.** Irreparable Harm – Ongoing Exclusion from disabled child's education and exercise of First Amendment rights. The supplemental record confirms that Plaintiff's injury is ongoing. Defendants continue to enforce an exclusion that interferes with Plaintiff's participation in his child's education and chills protected speech through threat of arrest. Such harms are irreparable and cannot be remedied by monetary damages.

**3.** Balance of Equities – The new evidence demonstrates that Defendants cannot identify any contemporaneous safety concern, criminal conduct, or policy violation that would justify Plaintiff's continued exclusion. **(Ex. T at T0061–T0064.)** Enjoining enforcement of the no-trespass order merely preserves the status quo and prevents continued constitutional injury, while imposing no cognizable harm on Defendants.

**4.** Public Interest – The public interest is served by preventing government actors from imposing exclusionary sanctions without lawful authority, procedural safeguards, or factual basis, and by protecting the right of parents to engage in protected speech and seek oversight from state authorities. The newly disclosed record underscores the importance of judicial intervention to prevent ongoing constitutional violations.

**5.** Supplemental Relief Is Narrow and Appropriate – Plaintiff seeks only narrowly tailored relief preventing enforcement of the October 24, 2025 no-trespass order pending final adjudication. The new evidence confirms that such relief is appropriate to prevent continued harm while preserving Defendants' ability to address legitimate safety concerns through lawful means.

## XII. TABLE OF EXHIBITS

*(Filed in Support of Plaintiff's Supplemental Brief in Support of Preliminary Injunction)*

| Exhibit | Description | Bates Range | Date | Notes |
|---|---|---|---|---|
| **Exhibit T** | SAU 36 Response to RSA 91-A Request | **T0001–T0120** | — | Consolidated partial production including internal emails, no-trespass documents, staff statements, and comms with state agencies |
| — | Initial Internal SAU 36 Email Chain | **T0001–T0004** | Oct. 22–23, 2025 | References "attached documentation" not included in production |
| — | No-Trespass Order | **T0005** | Oct. 24, 2025 | Issued and served through law enforcement |
| — | Addendum to No-Trespass Order | **T0006** | Oct. 24, 2025 | Unsigned and undated; contains behavioral restrictions |
| — | Emails: Marion Anastasia to Stephen LaBonte (DOT) | **T0007–T0010** | Nov. 5, 2025 | District correspondence regarding DOT inquiry |
| — | Email: Plaintiff to Marion Anastasia | **T0011** | Nov. 7, 2025 | Follow-up regarding lack of response to rescission request |
| — | Email: Marion Anastasia to Plaintiff | **T0012–T0013** | Nov. 7, 2025 | Response regarding rescission request |
| — | Email: Sharal Plumley to Cristina Ostrowski (NH DOJ) | **T0016–T0017** | Nov. 7, 2025 | Clarifies internal handling and prior non-response |
| — | Statement of Brooke Dubreuil | **T0019** | Oct. 20, 2025 | Staff narrative expressing subjective concerns |
| — | Internal Emails re Plaintiff's DOT Inquiry | **T0020–T0022** | Oct. 17, 2025 | Reaction to Plaintiff's protected petitioning |
| — | Internal Drafting Emails re No-Trespass Order | **T0023–T0028** | Oct. 23, 2025 | Discussion of scope, parameters, and service |
| — | Internal Email Thread (Cronin, Lemoine, Laska) | **T0029–T0035** | Oct. 23, 2025 | Includes reference to unproduced "*I provided my own*" statement |
| — | Email: Officer Laska to Marion Anastasia | **T0036–T0042** | Oct. 23, 2025 | Coordination regarding issuance and service |
| — | Jennifer Lemoine Email Threads | **T0043–T0052** | Oct. 23, 2025 | Internal planning communications |
| — | Email: Marion Anastasia to Robert Loiacono | **T0053–T0054** | Oct. 24, 2025 | Only Board-related correspondence |
| — | Plaintiff's Request for Review | **T0055** | Oct. 20, 2025 | Transmitted by Plaintiff to district; internal forwarding communication not produced |
| — | Email: Officer Laska | **T0059–T0060** | Oct. 17, 2025 | Internal communication |
| — | Email: Stephen LaBonte (NH DoT) | **T0061–T0064** | Nov. 5, 2025 | Addresses traffic-control and crosswalk authority |
| — | Internal SAU 36 Email Thread | **T0065–T0071** | Oct. 23, 2025 | Administrative planning following DOT inquiry<br>(Critical timing Emails) |
| — | Email: Marion Anastasia forwarding complaint | **T0072** | Oct. 17, 2025 | Internal forwarding |
| — | Emails referencing Plaintiff's recording and status | **T0073–T0075** | Oct. 17–20, 2025 | Internal discussion<br>(Demonstrates Retaliatory motive) |
| — | Email: Stephen LaBonte (DOT) to Plaintiff et al. | **T0076–T0078** | Oct. 21, 2025 | DOT response |

| Exhibit | Description | Bates Range | Date | Notes |
|---|---|---|---|---|
| — | Sharal Plumley Email Thread | **T0079–T0084** | Oct. 23, 2025 | Internal discussion |
| — | Email: Officer Laska referencing "statements" | **T0085–T0088** | Oct. 23, 2025 | References unproduced statement |
| — | Michael Cronin Email Thread re IEP Logistics | **T0089–T0093** | Oct. 23, 2025 | Discussion of meeting relocation |
| — | Email: Chief Maxwell Hodgdon | **T0094–T0098** | Nov. 5, 2025 | Post-hoc response to DOT inquiry |
| — | Email: Marion Anastasia forwarding Plaintiff email | **T0100** | Sept. 10, 2025 | Internal forwarding |
| — | Plaintiff's School Board Statement | **T0102–T0103** | Nov. 6, 2025 | Protected public comment |
| — | Email: Officer Laska | **T0105–T0106** | Sept. 10, 2025 | Internal communication |
| — | Email: Marion Anastasia to Plaintiff | **T0108–T0110** | Sept. 11, 2025 | Safety meeting referenced |
| — | Email: Marion Anastasia to Sharal Plumley | **T0112–T0115** | Sept. 10, 2025 | Internal correspondence |
| — | Paraprofessional Narrative | **T0119–T0120** | — | Unsigned and undated |

**XIII. CONCLUSION**

The newly disclosed evidence demonstrates that the no-trespass order was issued without cause, without procedure, and in retaliation for Plaintiff's protected speech. For these reasons, and those previously briefed, Plaintiff respectfully requests that the Court:

- Enjoin enforcement of the October 24, 2025 no-trespass order;
- Order Defendants to rescind the order; and
- Grant such other and further relief as is just and proper.

Respectfully submitted,

Dated: December 15, 2025

/s/ Joseph J. Barton

______________________________

JOSEPH J. BARTON, Pro Se
120 Cottage Street, Suite 1
Littleton, NH 03561
(603) 969-2706
joseph.barton@gc.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of the foregoing Supplemental Brief in Support of Preliminary Injunction was served via the Court's CM/ECF system upon all counsel of record.

Dated: December 15, 2025

/s/ Joseph J. Barton

JOSEPH J. BARTON, Pro Se