UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

JOSEPH J. BARTON,

Plaintiff,

v.

TOWN OF WHITEFIELD, NH, ET AL.,

Defendants.

Docket No. 1:25-cv-00451-LM-TSM

**DEFENDANTS MARION ANASTASIA AND WHITE MOUNTAINS REGIONAL SCHOOL DISCTRICT (SAU 36)'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

NOW COME Defendants Marion Anastasia ("Superintendent Anastasia") and White Mountains Regional School District (SAU 36) (the "District") (each a "Defendant," and collectively, the "Defendants"), by and through their attorneys Morrison Mahoney LLP, and submit this Memorandum of Law in support of their motion to dismiss all claims asserted in Plaintiff's First Amended Complaint ("Amended Complaint") pursuant to Rule 12(b)(6). As set forth below, even accepting Plaintiff's allegations as true for purposes of this motion, the Amended Complaint fails to state any claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiff Joseph Barton filed this action after the School District issued a one-year visitor restriction following an incident at Whitefield Elementary School in which he removed a traffic-control cone placed to manage student safety during arrival and dismissal. Although Plaintiff attempts to characterize the restriction as retaliation for his communications with school officials, law enforcement, and state agencies, the allegations

outlined in Amended Complaint confirm that the District acted only after Plaintiff physically interfered with a safety measure on school grounds.

Plaintiff asserts seven claims against Superintendent Anastasia and the District, but none states a viable cause of action. The Amended Complaint contains no non-conclusory allegations that Superintendent Anastasia acted with retaliatory motive, harbored animus toward Plaintiff's speech, or imposed the restriction for any reason other than the conduct he describes. The chronology pled in the Amended Complaint makes plain that the restriction followed the cone-removal incident—not the various emails, inquiries, and complaints on which Plaintiff attempts to rely.

Plaintiff's due-process theory fails for additional reasons. His claim rests on the premise that the visitor restriction interfered with his participation in his daughter's education, including IEP-related matters. But allegations of that nature fall within the IDEA and are addressed in Count VI, which Plaintiff did not exhaust. And even apart from the IDEA, the Constitution does not grant parents an entitlement to unfettered access to school buildings. Schools may regulate when and how members of the public—including parents—enter their facilities, and Plaintiff's dual roles as parent and legislator do not transform routine safety-based access limitations into constitutional violations.

The remaining counts fare no better. The equal-protection claim identifies no comparator and pleads no facts suggesting intentional disparate treatment. The *Monell* claim rests on District policies but does not plausibly allege that the no-trespass order resulted from any District policy, custom, or final policymaker decision attributed to the District. The request for declaratory and injunctive relief depends entirely on the underlying counts and necessarily fails with them.

Superintendent Anastasia is also entitled to qualified immunity. Nothing in the Amended Complaint identifies any clearly established right to unrestricted entry onto school property following a safety-related incident, and no precedent would have alerted a reasonable school administrator that issuing a temporary visitor restriction under these circumstances violated the Constitution.

Because the Amended Complaint, even taken as true, does not allege any plausible constitutional violation, all claims against the District and Superintendent Anastasia must be dismissed under Rule 12(b)(6).

## II. FACTS AS ALLEGED

The following facts are drawn from Plaintiff's Amended Complaint and the exhibits incorporated by reference therein and are accepted as true solely for purposes of this motion.[1]

Plaintiff alleges that he is an individual and duly elected member of the New Hampshire House of Representatives, Grafton District 1, residing in the town of Littleton, New Hampshire. Amend. Compl. ¶ 5. He alleges that on May 5, 2025, he submitted an information request to Whitefield Elementary School Principal Sharal Plumley "inquiring about the cause for the school crosswalk to be obstructed, the authority under which it was obstructed, whether these actions were permanent or temporary, and any exceptions regarding bypassing the crosswalk impediments or the steps." *Id.* ¶¶ 14-17; Ex. B. Plaintiff alleges that this information request went unanswered. *Id.* ¶ 18.

[1] The Amended Complaint "incorporates by reference Exhibits A–F filed with the original Complaint," but does not reattach those materials. Amend. Compl. ¶ 2. For the Court's convenience, Defendants have attached copies of Exhibits A–F to this motion, and citations in this Memorandum to "Ex. A–F" refer to those attachments.

Plaintiff further alleges that on September 10, 2025, he forwarded that same information request by email to Superintendent Anastasia, suggesting that the continued practice of "blocking/impeding a designated crosswalk" violated state law and that school staff were not properly authorized to direct traffic. *Id.* ¶ 20; Ex. B at 1 (email from Plaintiff to Superintendent Anastasia, dated September 10, 2025), Superintendent Anastasia replied, "we are out of your Grafton 01 jurisdiction.," *Id.* ¶ 27, but did not respond to questions specifically about the crosswalk. Amend. Compl. ¶ 28.

Plaintiff alleges that on or about September 14, 2025, he filed Legislative Service Request 26-2717, concerning obstructions of public crosswalks. *Id.* ¶ 31; Ex. A. On October 17, 2025, Plaintiff alleges that he filed a written complaint with the Whitefield Police Department concerning the use of the crosswalk and the direction of traffic at Whitefield Elementary School. *Id.* ¶¶ 33-34. In the sworn statement Plaintiff further avers that, while on the school grounds that day, he observed a traffic cone placed in the center of the crosswalk and ***removed the cone to "restore access" to the crosswalk***, and that a Whitefield police officer later informed him he could be arrested for disorderly conduct if he removed a cone again. *Id.* ¶¶ 35-36; Ex. D ¶ 5, 8.

Plaintiff further alleges that on October 17, 2025, he emailed the New Hampshire Department of Transportation regarding rules applicable to the Whitefield Elementary School crosswalk and related issues, and that Superintendent Anastasia was copied on that correspondence. Amend. Compl. ¶¶ 37-41; Ex. C (email from Plaintiff's ***legislative email address***, dated October 17, 2025). On October 20, 2025, Plaintiff alleges that he filed a "Request for Review" with the New Hampshire Attorney General's Office regarding the conduct of the Whitefield Police Department. *Id.* ¶¶ 42-47; Ex. D.

Plaintiff alleges that on October 24, 2025, Superintendent Anastasia and the White Mountains Regional School District issued a "no-trespass order" against him, *Id.* ¶¶ 48-50, without notice, reason, explanation, authority, and any process or opportunity to be heard. *Id.* ¶¶ 55-69; Ex. E. The no-trespass form and its addendum state that ***Plaintiff is permitted on school grounds for the limited purpose of transporting his child, provided he remains in his vehicle and does not enter the building.*** Ex. E.

Plaintiff alleges that District Policy KFA governs public conduct on school property and authorizes the Superintendent to issue "no trespass" letters only to persons who engage in certain prohibited conduct, such as injuring or threatening others, disrupting school activities, damaging property, violating the law, or refusing directives from authorized personnel. Amend. Compl. ¶¶ 70–83. He alleges that he did not engage in any of the conduct described in Policy KFA, that the no-trespass order did not identify any such conduct, and that the Superintendent therefore acted beyond the authority provided by that policy. *Id.* ¶¶ 83–94.

Plaintiff further alleges that District Policy CHD requires the School Board to ratify Superintendent actions taken "in the absence of policy," and he asserts that the no-trespass order fell within that provision notwithstanding his allegation that Policy KFA governs such orders. *Id.* ¶¶ 95–103.

Plaintiff further alleges that on October 24, 2025, he sent a "Demand for Recission or Written Justification of No-Trespass Order" to Superintendent Anastasia, Chief Maxwell Hodgdon, and members of the SAU 36 School Board. *Id.* ¶¶ 104-111; Ex. F.

Plaintiff alleges that on November 6, 2025, he addressed the SAU 36 School Board during public session regarding the no-trespass order, ***and that the Board did not rescind***

***or review the order***. *Id.* ¶¶ 119–122. He further alleges that, on the same date, Whitefield Elementary School issued an email stating that signups for "Winter Wednesday" activities were to occur in person at the school, which he asserts prevented him from enrolling his daughter due to the no-trespass order. Amend. Compl. ¶¶ 123–125.

Plaintiff alleges that as of November 10, 2025, Defendants had not rescinded the no-trespass order or provided written justification, identified authority or a factual basis for the order, or identified any appeal process. *Id*. ¶¶ 112–118.

## III. STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (internal quotations and citations omitted). "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is ***inapplicable to legal conclusions***," and courts must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (emphasis added); see also *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 327 (1st Cir. 2016).

The Court must "accept the well-pleaded factual averments of the complaint as true and construe these facts in the light most favorable to the [plaintiff]," *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987), but should not "credit bald assertions, unsupportable conclusions, and opprobrious epithets woven into the fabric of the

complaint." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d. 12, 15 (1st Cir. 2003) (internal quotations and citation omitted).

"[A] plaintiff … [is] required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514-15 (1988).

These principles apply with full force in § 1983 cases alleging unconstitutional motive. Conclusory allegations of intent, animus, or retaliation are not entitled to the presumption of truth and cannot, without supporting facts, state a plausible claim for relief. See *Iqbal*, 556 U.S. at 680–81.

## IV. <u>ARGUMENT</u>

Even accepting Plaintiff's allegations as true for purposes of this motion, the Amended Complaint does not plead facts that state any plausible constitutional claim against Superintendent Anastasia or the District. Each count rests on conclusory assertions of motive, legal conclusions cast as factual allegations, or theories foreclosed by well-established law governing school operations, parental access to school property, and municipal liability under § 1983. As the Amended Complaint itself makes clear, the visitor restriction was issued only after Plaintiff interfered with a safety measure on school grounds—not because of his emails, legislative requests, or other protected activity. Under the governing pleading standards, the absence of factual allegations supporting an inference of unconstitutional motive, deprivation of a protected interest, or any municipal policy or custom is fatal to each claim. Accordingly, all counts should be dismissed.

### A. <u>Count I (First Amendment Retaliation) Fails to State a Plausible Claim for Relief</u>

Count I should be dismissed because the Amended Complaint does not plead facts supporting a plausible inference that Defendants acted with retaliatory intent. Although Plaintiff recites that the District restricted his access to school grounds because of his communications with school and government officials, those allegations are entirely conclusory. The Amended Complaint's factual narrative establishes a clear, non-retaliatory reason for the visitor restriction: ***Plaintiff himself admits that he physically removed a traffic cone being used to control student safety during drop-off***, and that police warned him he could be arrested if he did so again. Amend. Compl. ¶ 36; Ex. D ¶¶ 5, 8. When the complaint itself provides an "obvious alternative explanation" for the challenged action, allegations of retaliatory motive are not plausible." *Iqbal*, 556 U.S. at 662.

To state a First Amendment retaliation claim under § 1983, Plaintiff must allege facts showing that (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) his protected conduct was a substantial or motivating factor in that action. See *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012). At the pleading stage, causation requires allegations from which retaliatory intent is a reasonable, not speculative, inference—conclusory assertions of motive or intent are not accepted as true, and courts disregard "threadbare recitals of the elements" supported by mere conclusory statements. *Iqbal*, 556 U.S. at 664. Consistent with that framework, the Supreme Court has reiterated that a First Amendment plaintiff must show a "causal connection" between the official's "retaliatory animus" and the alleged injury, and that the animus was a "but-for" cause of the adverse action. *Nieves v. Bartlett*, 587 U.S. 391, 399–400 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006).

Following these principles, the Amended Complaint does not plausibly allege that Plaintiff's protected activity was a substantial or motivating factor in the visitor restriction. The chronology pled in the Amended Complaint forecloses such an inference. Plaintiff alleges that he first raised concerns with school staff in May 2025 and again in September 2025, Amend. Compl. ¶¶ 14–30, yet no action was taken in response to those communications. Likewise, he identifies several later interactions with outside agencies—including a legislative service request, a sworn complaint to the Whitefield Police Department, and a request for review to the Attorney General's Office—but ***does not allege that Superintendent Anastasia or any District official was informed of those matters at the time they occurred***. See Amend. Compl. ¶¶ 31-36; Ex. D. Without allegations that the District knew of these purportedly protected activities, Plaintiff's claim cannot support a plausible inference of retaliation, because a First Amendment plaintiff must show that the protected conduct was a "substantial or motivating factor" in the adverse action. *D.B.*, 675 F.3d at 43.

By contrast, the Amended Complaint affirmatively alleges that Plaintiff engaged in non-expressive conduct on school grounds on October 17, 2025, when he removed a safety cone placed to control student traffic during arrival and dismissal. Ex. D ¶ 5. Plaintiff further admits he was warned by law enforcement that he could be arrested if he repeated that conduct. Ex. D ¶ 8. One week later, on October 24, 2025, the District issued the visitor restriction. Ex. E. Given this sequence, the Court is not required to infer that the visitor restriction was issued because of Plaintiff's earlier emails or petitions to outside agencies, rather than his admitted interference with a student-safety measure. See *Iqbal*, 556 U.S. at

682 (where a complaint's allegations reveal an "obvious alternative explanation," allegations of unconstitutional motive are not plausible).

The absence of any factual allegations suggesting hostility to Plaintiff's speech further undermines causation. ***The Amended Complaint identifies no statements or conduct by Superintendent Anastasia or the District indicating opposition to Plaintiff's viewpoints, and nothing suggesting that the District acted to deter or punish protected expression***. In fact, the Amended Complaint does not outright assert any factual allegation, even in a conclusory manner, that either Defendant engaged in "retaliation." [2] Instead, Plaintiff relies solely on inferences, that the timing of the visitor restriction demonstrates retaliation. Amend. Compl. ¶¶ 174-192. Such inferences are precisely the type of conclusory allegations that do not satisfy federal pleading standards. As this Circuit has emphasized, a court assessing a complaint under *Twombly* and *Iqbal* must distinguish factual allegations from "labels and conclusions" and determine whether the facts alleged plausibly support an entitlement to relief. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

In applying that plausibility analysis, courts consider whether the complaint itself furnishes an "obvious alternative explanation" for the challenged action—one that makes the plaintiff's theory of unconstitutional motive implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566–67; *Iqbal*, 556 U.S. at 682. The Amended Complaint does exactly that. Plaintiff alleges that he removed a traffic-control cone during student drop-off and was warned by law enforcement that he could be arrested if he repeated that conduct. Amend.

[2] The phrase "retaliation" is used in only three instances—in the heading of Count I preceding ¶ 174 ("First Amendment Retaliation"); in ¶ 175 ("the First Amendment prohibits government retaliation for protected speech"); and in the heading of Count II preceding ¶ 204 ("Post-Filing Retaliation")

Compl. ¶ 36; Ex. D ¶¶ 5, 8. That safety-related incident provides a straightforward, non-retaliatory reason for the District's visitor restriction, and under the governing pleading standard, this more natural explanation defeats Plaintiff's attempt to infer retaliatory animus from ***timing alone***.

This causation defect is underscored by the Supreme Court's decision in *Mt. Healthy City School District Board of Education v. Doyle*, which held that even where protected conduct "played a part" in an adverse decision, there is no First Amendment liability if the defendant "would have reached the same decision" in the absence of the protected activity. 429 U.S. 274, 285–87 (1977). Although *Doyle* arose at summary judgment, its causation principle is instructive at the pleading stage: a plaintiff must allege facts making it plausible that the challenged action would not have occurred but for the alleged retaliatory animus, rather than the obvious legitimate reason. Here, Plaintiff's own allegations show that the District had an evident, independent basis for issuing the visitor restriction—his admitted interference with a student-safety measure—and he pleads no facts suggesting that, absent his prior speech, the District would have treated that conduct differently. Under *Doyle's* causation framework, as applied through *Twombly* and *Iqbal*, Count I does not plausibly allege that retaliation, rather than the safety incident, drove the District's decision.

Because the Amended Complaint itself identifies an obvious, legitimate reason for the visitor restriction and pleads no facts showing that Plaintiff's speech—rather than his admitted safety-related conduct—drove the District's decision, Count I fails to allege causation. Under *Twombly*, *Iqbal*, and the causation framework reflected in *Doyle*, Plaintiff has not plausibly alleged that retaliation was the but-for cause of the restriction. Count I must be dismissed.

### B. Count II (Procedural and Substantive Due Process) Fails to State a Claim

Count II fails because the Amended Complaint does not identify any liberty or property interest protected by the Due Process Clause, does not allege a deprivation of such an interest, and pleads no facts that remotely satisfy the demanding standard for a substantive due process violation.

#### i. Plaintiff has no protected liberty or property interest in unrestricted access to school property.

The Due Process Clause is "not a guarantee against incorrect or ill-advised [government] decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). It protects only against the deprivation of interests that qualify as "liberty" or "property" within the meaning of the *Fourteenth Amendment. Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). Property interests are not created by the Constitution; they arise, if at all, from "rules or understandings" that secure an entitlement to a specific benefit. *Id*. at 577. Liberty interests likewise are limited to interests of constitutional dimension—such as freedom from physical restraint, certain family relationships, or freedom from government-imposed stigma that forecloses future opportunities. *Id*. at 572-73.

Plaintiff alleges that the visitor restriction "bars Plaintiff from entering [Whitefield Elementary School]." Amend. Compl. ¶ 196. ***But he identifies no statute, regulation, policy, or other independent source that confers on him a legally enforceable entitlement to physically enter school buildings at will***. Absent such a source, there is no cognizable interest in unrestricted access to school grounds. See *Roth*, 408 U.S. at 578 (no property interest where governing rules "secured absolutely no interest" in continued benefit or any statute, rule or policy that secured such a benefit).

Schools, moreover, may regulate entry into their buildings and adjacent grounds as part of their responsibility to maintain a safe and orderly educational environment. The Supreme Court has emphasized the "special characteristics of the school environment," recognizing that schools may impose reasonable restrictions to prevent disruptions to school activities. *Grayned v. City of Rockford*, 408 U.S. 104, 118–20 (1972). And when the government acts in its capacity as a property owner, it may limit access to its facilities to serve legitimate operational and safety interests. *Adderley v. Florida*, 385 U.S. 39, 47–48 (1966). Nothing in these cases suggests that members of the public—including parents—hold a constitutional entitlement to enter school buildings whenever they wish.

Here, Plaintiff does not allege that Defendants interfered with any recognized parental liberty interest. He does not claim that his custodial rights have been altered, that he has been ***prevented*** from making educational decisions for his child, or that he has been barred from communicating with school personnel. The only restriction he identifies concerns his ***physical presence*** being restricted, and even that is qualified—he may enter school grounds for student drop-off and pickup so long as he remains in his vehicle. Ex. E. Furthermore, accepting Plaintiff's allegations as true, an IEP meeting was held on November 13, 2025, at White Mountains Regional Highschool. Amend. Compl. ¶ 140. A temporary, safety-related visitor limitation of this kind falls squarely within the type of routine access regulation that schools may impose and does not implicate a fundamental liberty interest.

Because Plaintiff identifies no liberty or property interest protected by the Fourteenth Amendment, his procedural due process claim fails as a matter of law.

ii. <u>Plaintiff's "educational participation" allegations cannot supply a separate due-process interest and, to the extent they concern</u>

special-education participation, they fall within the IDEA's exclusive framework.

Plaintiff's "educational participation" allegations cannot supply a separate due-process interest and, to the extent they concern special-education participation, they fall within the IDEA's exclusive framework.

Plaintiff suggests that the visitor restriction interfered with his ability to participate in his child's education, including attendance at IEP meetings and enrollment in school activities. Amend. Compl. ¶¶ 251–53, 261–66. But neither the Constitution nor any statute creates a liberty or property interest in attending school events, entering school buildings in person, or participating in extracurricular programs such as "Winter Wednesday." See Amend. Compl. ¶ 123. These are matters of school administration, not constitutional entitlements. The Supreme Court's parental-rights cases protect parents' authority to direct the upbringing and education of their children—not a right to physically enter school facilities or to participate in school programming in any particular manner. See*, e.g., Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (recognizing a fundamental liberty interest in the care, custody, and control of one's children); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925) (holding that parents possess a liberty interest in directing their children's education); Compare *Grayned*, 408 U.S. at 118–20 (recognizing schools' authority to restrict access to maintain order), and *Adderley*, 385 U.S. at 47–48 (explaining that government may control access to its property).

To the extent Plaintiff reframes these allegations as interference with IEP-related participation, that theory is governed exclusively by the IDEA and is addressed in Count VI—not under the Fourteenth Amendment's due-process clause.

Here, Plaintiff does not allege that the District denied his child a Free Appropriate Public Education ("FAPE"), excluded him from the IEP team, or otherwise interfered with rights the IDEA secures. His Complaint describes only practical burdens associated with the visitor restriction—such as difficulty enrolling his child in an optional activity. Amend. Compl. ¶¶ 261-66. Those inconveniences do not constitute the deprivation of any constitutional liberty or property interest.

This Circuit has expressly rejected attempts to repackage IDEA-related concerns as constitutional claims under § 1983 in order to bypass the IDEA's exclusive framework. *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 28–29 (1st Cir. 2006). To the extent Plaintiff relies on alleged interference with IEP-related participation to establish the protected interest required for a due-process claim, that reliance is misplaced: the IDEA—not the Fourteenth Amendment—governs such claims.

Because the Amended Complaint identifies no independent constitutional interest in attending school events or participating in IEP matters in any particular manner, and because IDEA-related allegations must proceed through the statute's own remedial process, Count II fails to state a procedural due-process claim.

iii. The Amended Complaint does not allege conduct that "shocks the conscience."

Substantive due process protects only against the most egregious executive abuse—conduct that it "shocks the conscience" and "violates the decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). This Circuit has likewise held that, in this context, conduct must be at least "extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable" to violate substantive due process.

*Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (quoting *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999)).

A temporary visitor restriction imposed after a safety-related incident on school grounds does not approach that standard. The Amended Complaint alleges no physical harm, no custodial interference, no termination of parental rights, and no conduct remotely comparable to the kind of "stunning" abuse of power that the First Circuit has found necessary to state a substantive due process claim. At most, Plaintiff challenges a discretionary school-safety decision he believes to be unjustified. Substantive due process does not "constitutionaliz[e] tort law so as to impos[e] liability whenever someone cloaked with state authority causes harm." *Pagan.* 448 F.3d at 32 (citing *Lewis*, 523 U.S. at 848).

Even if Plaintiff believes the District's response was unnecessary or unwise, substantive due process may not, in the ordinary course, be invoked to challenge discretionary decisions of state or local decisionmakers. *Id.* at 33. A routine, safety-related visitor restriction issued in response to a parent's admitted interference with traffic control does not remotely "shock the conscience" and cannot sustain a substantive due process claim as a matter of law.

Because Plaintiff has not alleged the deprivation of any cognizable liberty or property interest, and because the conduct he challenges is not conscience-shocking, Count II fails to state either a procedural or substantive due process claim and should be dismissed.

### C. <u>Count III (Post-Filing Retaliation) Fails for the Same Reasons as Count I</u>

Count III, styled as "Post-Filing Retaliation," simply repackages the same no-trespass order and Defendants' alleged failure to rescind the notice after this lawsuit was filed. See

Amend. Compl. ¶¶ 204–218. It does not allege any new protected activity beyond Plaintiff's filing of the Amended Complaint, any new adverse action beyond the preexisting no-trespass order, or any nonconclusory facts suggesting a distinct retaliatory motive. It simply reasserts the same theory advanced in Count I.

Because Count I fails to plausibly allege that the visitor restriction was imposed for a retaliatory reason, its continued enforcement cannot support a separate retaliation claim. Count III adds nothing that cures the causation and plausibility defects that defeat Count I. For that reason, Count III necessarily fails as well and should be dismissed.

### D. Count IV (Equal Protection) Fails to State a Plausible Claim for Relief

Count IV should be dismissed because, even accepting the Amended Complaint's allegations as true, Plaintiff has not plausibly pled the essential elements of an equal protection violation. Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment. See *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state such a claim, a plaintiff must allege facts indicating that, "compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, ***intent to inhibit or punish the exercise of constitutional rights***, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909–10 (1st Cir.1995) (emphasis added).

In the absence of membership in a protected class, a "class-of-one" plaintiff bears the burden to allege that he was "***intentionally*** treated differently from others similarly situated and that there ***is no rational basis for the difference in treatment***." *Village of Willowbrook v. Olech*, 528 U.S. 56, 564 2 (2000) (emphasis added). This Circuit has emphasized that the "similarly situated" requirement is demanding and that a plaintiff

must identify comparators who are alike "in all relevant respects," not merely assert similarity in conclusory fashion. *Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (quotation omitted); see also *Cordi-Allen v. Conlon*, 494 F.3d 245, 250–52 (1st Cir. 2007) (at summary judgment, class-of-one plaintiff must show an "extremely high degree of similarity" between himself and comparators).

Measured against these standards, Plaintiff's equal protection allegations fall well short of plausibility under *Twombly* and *Iqbal*. Count IV consists of the bare conclusion and a general inference that Defendants treated Plaintiff differently from similarly situated individuals. However, akin to the manner in which Count I has been pleaded, Count IV provides zero factual detail and identifies no single comparator or description of how any such person was similarly situated to Plaintiff. A complaint cannot "drag a defendant past the pleading threshold" simply by invoking a "conclusory description of a general scenario which could be dominated by unpleaded facts." *Barrington Cove*, 246 F.3d at 8–9 (upholding Rule 12(b)(6) dismissal where plaintiff failed to allege similarity "with reasonable particularity" and the facts pled suggested reasonable grounds for different treatment) (quotation omitted). Here, Plaintiff does not allege that any other parent, visitor, or community member who interfered with traffic-control measures during student arrival or dismissal was permitted unrestricted access to school property or treated more favorably. That omission is fatal under the First Circuit's equal protection framework, which requires a plaintiff to "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (quotation omitted).

Nor does the Amended Complaint plausibly allege the requisite discriminatory intent or irrationality. Plaintiff does not claim membership in any protected class. Rather, he seeks to proceed on a selective-treatment or class-of-one theory. Thus, he must allege that, as compared with others similarly situated, he was selectively treated "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure." *Rogato*, 60 F.3d at 909–10. Count IV does not contain any such allegations. It does not identify any animus, any arbitrary personal hostility, or any reason to infer that Defendants acted for reasons unrelated to legitimate school-safety concerns. This gap is precisely the type of "threadbare" pleading that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Crucially, the Amended Complaint and its exhibits supply an obvious, legitimate reason for the visitor restriction that defeats any inference of irrational or arbitrary discrimination. Plaintiff's own sworn statement acknowledges that, on October 17, 2025, while on school grounds, he removed a traffic cone placed in the center of the crosswalk being used to manage traffic and pedestrian safety during school operations. See Ex. D ¶¶ 5, 8. Thereafter, on October 24, 2025, the District issued a no-trespass order limiting his physical presence on campus. Ex. E. Those allegations, taken together, describe non-expressive conduct directly implicating student safety and campus management. Where a defendant provides "entirely reasonable grounds" that could provide a rational basis for the classification, for differential treatment, ***it is not necessary to wait for further factual development*** [of the record]. *Barrington Cove Ltd.*, 246 F.3d at 8–9. Likewise, here, a school administrator's decision to restrict access by a parent who has interfered with safety devices during arrival and dismissal ***is rational on its face*** and readily satisfies the

deferential rational-basis standard applicable to class-of-one claims. See *Olech*, 528 U.S. at 564.

Plaintiff's attempt to infer discriminatory intent from timing alone does not cure these defects. Temporal proximity between his various complaints and the visitor restriction cannot substitute for factual allegations identifying similarly situated individuals or showing an impermissible motive. *Barrington Cove* makes clear that, at the pleading stage, a plaintiff must allege with reasonable particularity that others "similarly situated in all relevant respects" were treated differently, and that conclusory assertions of disparate treatment are insufficient where the facts alleged reveal an obvious, legitimate basis for the challenged action. 246 F.3d at 8–9. Here, the Amended Complaint's own chronology shows that the District took no action in response to Plaintiff's earlier communications or legislative activity, and that the visitor restriction was issued only after his admitted removal of the traffic-control cone. Those allegations do not plausibly support an inference of arbitrary or irrational singling-out. *Cordi-Allen*, 494 F.3d at 52.

Finally, to the extent Plaintiff suggests that he was treated differently because he is an elected legislator or because he engaged in protected speech, that theory is fully addressed by the First Amendment analysis in Count I and does not transform his disagreement with a safety-related access decision into an equal protection claim. The Equal Protection Clause does not constitutionalize every dispute over how visitor restrictions are applied, especially where the complaint itself discloses a rational basis for the decision and alleges no concrete facts showing that anyone similarly situated was treated more favorably. Because Count IV pleads no comparators, no facts showing discriminatory intent or irrationality (even conclusory), and instead reveals an obvious

legitimate justification for the challenged action, it fails to state a plausible claim for relief and should be dismissed under Rule 12(b)(6).

### D. Count V (*Monell* Liability) Fails to State a Claim

Count V must be dismissed because the Amended Complaint does not plausibly allege municipal liability under *Monell*. Municipalities are liable under § 1983 only for actions that represent the municipality's own official policy or custom—not for isolated decisions of employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). As the Supreme Court clarified in *Pembaur* and *Praprotnik*, a single decision can constitute municipal "policy" only where:

> (1) the act is one for which the municipality itself is actually responsible—i.e., it was officially sanctioned or ordered;
> (2) the decision was made by an official who possesses final policymaking authority in that specific area of municipal business; and
> (3) whether an official has final policymaking authority is determined by state law, not by job title or general administrative responsibilities.

See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

The Amended Complaint identifies two District policies—KFA and CHD—but neither supports municipal liability. To the contrary, Plaintiff affirmatively alleges that Policy KFA governs when a no-trespass order may issue, and he contends that he did not engage in any conduct covered by that policy. Amend. Compl. ¶¶ 70–94. By Plaintiff's own theory, the Superintendent therefore acted contrary to KFA, not pursuant to District policy. But a municipal employee's alleged deviation from written policy cannot establish *Monell* liability as it is the opposite of an official policy or custom.

Plaintiff also cites District Policy CHD, arguing that it required the School Board to "ratify" the no-trespass order because it was issued "in the absence of policy." Amend.

Compl. ¶¶ 95–103. But that assertion contradicts his allegation that Policy KFA governs such orders. And in any event, non-action by the School Board does not amount to *Monell* ratification: ratification requires an affirmative approval of the challenged conduct, not silence or inaction. See *Praprotnik*, 485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final")

The Amended Complaint contains no factual allegations suggesting that Superintendent Anastasia possessed final policymaking authority for the District with respect to visitor-restriction decisions. At most, it describes the exercise of operational discretion in a school-safety matter, which is insufficient to transform her decision into "District policy" under *Monell*.

Plaintiff's assertions, even if accepted as true, describe a one-off, allegedly unauthorized decision in response to a specific incident—not an official policy, not a longstanding custom, and not a failure-to-train or supervision theory of the type addressed in *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011).

The *Monell* claim also fails for the independent reason that Plaintiff has not adequately pled any underlying constitutional violation. As explained above, Counts I–IV do not state viable claims for First Amendment retaliation, due process, or equal protection. ***Without a predicate constitutional violation, there can be no municipal liability under § 1983***. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Amended Complaint alleges neither a District policy or custom nor a constitutional violation attributable to such a policy, Count V fails as a matter of law and should be dismissed.

### E. <u>Count VI Fails to State a Claim and is Premature</u>

Count VI of the Amended Complaint asserts a standalone claim under the IDEA based on allegations that the visitor restriction interfered with Plaintiff's parental participation in the IEP process. Amend. Compl. ¶ 25. Even accepting those allegations as true, the claim fails for two independent reasons.

First, IDEA claims must be administratively exhausted. The IDEA is a federal statute that establishes detailed procedures governing the evaluation, identification, and placement of children with disabilities, as well as the mechanisms for parental complaints and impartial due process hearings. See 20 U.S.C. §§ 1414–1415. This framework "establishes an elaborate procedural mechanism" that parents are required to invoke before seeking judicial relief. *Honig v. Doe*, 484 U.S. 305, 311-13 (1988) (interpreting the IDEA's statutory predecessor). Congress requires that a plaintiff exhaust certain administrative procedures before filing any civil action "seeking relief that is also available" under the IDEA. 20 U.S.C. § 1415(l). Whether exhaustion is required turns on the "substance" or "gravamen" of the claim, not the label the plaintiff chooses. See *Fry v. Napoleon Cmty. Schs.,* 580 U.S. 154, 165–69 (2017). Where, as here, a plaintiff alleges that school officials interfered with IDEA-created rights to parental participation in IEP meetings, the claim falls squarely within the IDEA's remedial scheme and must be pursued, if at all, through the administrative process.

Plaintiff does not allege that he invoked, much less exhausted, any IDEA administrative procedures. The Amended Complaint does not claim that he requested an IDEA due process hearing, filed a state administrative complaint, or otherwise proceeded through the mechanisms set out in § 1415. Instead, Count VI seeks to bypass that process

and obtain judicial relief directly for alleged violations of IDEA's parental participation provisions, 20 U.S.C. § 1415(b)(1); 34 C.F.R. §§ 300.322, 300.501(b). Amend. Compl. ¶¶ 251-253. That is exactly the kind of workaround the IDEA's exhaustion requirement—and First Circuit precedent—does not allow. See *Diaz–Fonseca*, 451 F.3d at 28–29 (plaintiffs may not evade IDEA's limited remedial structure and exhaustion requirement by recasting IDEA-type claims under other labels, including § 1983). Because Plaintiff has not exhausted the IDEA's administrative remedies, Count VI must be dismissed.

Second, even if exhaustion were excused, the Amended Complaint does not plausibly allege a violation of IDEA's parental participation requirements. The IDEA obligates school districts to ensure that parents are afforded the "opportunity to participate in meetings with respect to the identification, evaluation, and educational placement of the child." 20 U.S.C. § 1415(b)(1); 34 C.F.R. §§ 300.322, 300.501(b). The Amended Complaint acknowledges that, ***after the visitor restriction, the District scheduled and held an IEP meeting for Plaintiff's daughter*** on November 13, 2025, and that the meeting was held at White Mountains Regional High School—approximately six miles from Whitefield Elementary School—so that Plaintiff could attend. Amended Complaint ¶¶ 139-140, 142. Plaintiff does not allege that he was prevented from attending that meeting, that he was excluded from the IEP team, or that he was denied notice or an opportunity to be heard regarding his daughter's identification, evaluation, or placement.

Instead, Count VI rests on assertions that relocating the IEP meeting imposed an "additional burden" on Plaintiff and that the no-trespass order leaves unanswered questions about how he might respond to hypothetical emergencies, pick up his child if she becomes ill, or attend various school events. Amended Complaint ¶¶ 261-66. Those

allegations describe practical inconveniences flowing from a visitor restriction; they do not amount to a denial of the opportunity to participate in IEP meetings or other core IDEA processes. The IDEA does not guarantee Plaintiff that IEP meetings will occur at a particular building, or that every aspect of a parent's desired "normal parental involvement," Amend. Compl ¶ 266, will be accommodated in the precise manner he prefers.

Because Plaintiff has neither exhausted IDEA's exclusive administrative process nor pled facts showing that SAU 36 denied him the opportunity to participate in his child's IEP meetings, Count VI fails to state a claim upon which relief can be granted and should be dismissed.

**F. <u>Count VII (Declaratory and Injunctive Relief) Fails Derivatively</u>**

Count VII must be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent cause of action; it provides a remedy only where a plaintiff has stated a viable underlying claim. See *Skelly Oil Co. v. Phillips Petroleum* Co., 339 U.S. 667, 671–72 (1950) (the Act is procedural and does not enlarge jurisdiction or create substantive rights). Where a plaintiff fails to plead a constitutional violation, there is no substantive right on which declaratory or injunctive relief may rest. See *Heller*, 475 U.S. at 799. (where no underlying constitutional violation exists, there can be no derivative relief).

Because Counts I–VI fail to state any constitutional claim, Count VII—which is entirely derivative—must also be dismissed.

**G. <u>Superintendent Anastasia is Entitled to Qualified Immunity</u>**

Finally, even if Plaintiff had stated a constitutional violation—which he has not—Superintendent Anastasia is independently entitled to qualified immunity. "Qualified

immunity is a doctrine that shields government officials from individual-capacity suits for damages under § 1983 'when they made a decision that, even if constitutionally deficient, reasonably misapprehended the law governing the circumstances they confronted.'" *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021) (quoting *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). Accordingly, government officials, "are immune from such suits unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Id*. (quoting *Irish v. Fowler*, 979 F.3d 65, 73 (1st Cir. 2020)).

The "clearly established" requirement is satisfied when: (a) "the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right,"; and (b) "in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Stamps v. Town of Framingham*, 813 F.3d 27, 34 (1st Cir. 2016) (quoting *Mlodzinski v. Lewis*, 648 F.3d 24, 32-33 (1st Cir. 2011)). Although a "case directly on point" is unnecessary to pierce qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

The Amended Complaint alleges that Superintendent Anastasia issued a visitor restriction after Plaintiff admittedly removed a traffic-control cone during student arrival and was warned by law enforcement that further interference could lead to arrest. Nothing in Plaintiff's allegations identifies any clearly established constitutional right to unrestricted physical access to school property after a safety-related incident, nor any precedent holding that a temporary, safety-motivated visitor limitation violates the First

Amendment, the Due Process Clause, or the Equal Protection Clause. On these allegations, a reasonable school administrator could not have understood that issuing a limited visitor restriction under these circumstances was unconstitutional.

Although qualified immunity is sometimes resolved at summary judgment, dismissal under Rule 12(b)(6) is appropriate where— as here—the complaint provides all the facts needed to assess the plaintiff's claim. *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). Because the Amended Complaint alleges no violation of clearly established law, Superintendent Anastasia is entitled to qualified immunity.

## V. <u>CONCLUSION</u>

For all of the reasons set forth above, the Amended Complaint fails to state any plausible constitutional claim against either Superintendent Anastasia or the District. The factual allegations, taken as true, describe a safety-related response to Plaintiff's admitted interference with traffic-control measures on school grounds, not retaliation for protected speech, deprivation of a protected liberty or property interest, irrational discrimination, or the implementation of any municipal policy or custom. In the absence of a viable underlying constitutional violation, Plaintiff's *Monell* theory and his request for declaratory and injunctive relief necessarily fail as well.

Additionally, even if the Court were to conclude that the Amended Complaint alleges a constitutional violation, Superintendent Anastasia is entitled to qualified immunity because no clearly established law would have put a reasonable school administrator on notice that imposing a limited visitor restriction in these circumstances was unconstitutional.

Accordingly, Defendants White Mountains Regional School District (SAU 36) and Superintendent Marion Anastasia respectfully request that the Court grant their motion and dismiss all claims asserted against them, with prejudice.

Respectfully submitted,

WHITE MOUNTAINS REGIONAL SCHOOL DISTRICT (SAU 36) AND SUPERINTENDENT MARION ANASTASIA

MORRISON MAHONEY LLP

By /s/ *Adam R. Mordecai*

Adam R. Mordecai, #17727
amordecai@morrisonmahoney.com
R.J. Meurin, #266219
rmeurin@morrisonmahoney.com
Center of New Hampshire Office Tower
650 Elm Street, Suite 201
Manchester, NH 03101
Phone: 603-622-3400
Fax: 603-622-3466

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following persons on this date in the manner specified herein:

Electronically Served:

/s/ Adam R. Mordecai
Adam R. Mordecai, #17727