UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

JOSEPH J. BARTON,

Plaintiff,

v.

TOWN OF WHITEFIELD, NH, ET AL.,

Defendants.

Docket No. 1:25-cv-00451-LM-TSM

**DEFENDANTS MARION ANASTASIA AND WHITE MOUNTAINS REGIONAL SCHOOL DISCTRICT (SAU 36)'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COME Defendants Marion Anastasia ("Superintendent Anastasia") and White Mountains Regional School District (SAU 36) (the "District") (each a "Defendant," and collectively, the "Defendants"), by and through their attorneys Morrison Mahoney LLP, and submit this Memorandum of Law in support of their motion to dismiss all claims asserted in Plaintiff's Second Amended Complaint ("Second Amended Complaint") pursuant to Rules 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

Plaintiff Joseph Barton filed this action after the School District issued a one-year visitor restriction following an incident at Whitefield Elementary School involving a traffic-control cone used during student arrival and dismissal. Although Plaintiff attempts to characterize the restriction as retaliation for his communications with school officials, law enforcement, and state agencies, the chronology places the restriction immediately after the October 17, 2025 traffic-control dispute. Plaintiff's Second Amended Complaint largely restates the narrative advanced

by Plaintiff in prior filings and merely adds characterizations and conclusions of law. Those unilateral, subjective assertions do not fundamentally alter the legal analysis or supply the missing facts necessary to state a claim.

Plaintiff's due-process theory fails for additional reasons. Plaintiff now characterizes Ed 204.01 and District Policies KFA and CHD as sources of constitutionally protected liberty and property interests. But Plaintiff's characterization of his claim does not control whether those provisions create a protected substantive entitlement. The extent his theory rests on alleged interference with his participation in his daughter's education, those allegations fall within the IDEA and are addressed in Count VI, which Plaintiff did not exhaust. Even apart from the IDEA, the Constitution does not grant parents an entitlement to unfettered access to school buildings. Schools may regulate when and how members of the public—including parents—enter their facilities, and Plaintiff's dual roles as parent and legislator do not transform routine safety-based access limitations into constitutional violations.

The remaining counts fare no better. The equal-protection claim refers only to unidentified parents or visitors allegedly involved in unspecified parking disputes, traffic interference, or verbal disagreements and pleads no facts showing that any actual comparator was similarly situated in all relevant respects. The *Monell* claim adds the labels "final policymaker," "ratification," and "custom or practice," but still describes only a single visitor restriction and alleged inaction that is inconsistent with Plaintiff's own description of District policy. The request for declaratory and injunctive relief depends entirely on the underlying counts and necessarily fails with them.

Superintendent Anastasia is also entitled to qualified immunity. Nothing in the Second Amended Complaint identifies any clearly established right to unrestricted entry onto school

property following a safety-related incident, to pre-deprivation process before a limited visitor restriction, or to hold an IEP meeting at a particular school building, and no precedent would have alerted a reasonable school administrator that issuing a temporary visitor restriction under these circumstances violated the Constitution.

As to Count VII—Plaintiff's prayer for injunctive relief—the Court denied Plaintiff's motion for a temporary restraining order on February 11, 2026. Doc. 29. Also, separate from these pleading defects, subsequent events have eliminated any live controversy concerning prospective relief. The School Board rescinded Plaintiff's Notice Against Trespass and Addendum in their entirety, effective August 30, 2026. See Letter from Superintendent Robert Scott to the Whitefield Police Department dated August 18, 2026, attached hereto as Exhibit A ("Ex. A"). Plaintiff is therefore no longer subject to the restriction challenged in Count VII, and the requested declaratory and injunctive relief would have no present legal effect. Accordingly, Count VII is moot and should be dismissed without prejudice under Rule 12(b)(1).[1]

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Unlike the First Amended Complaint, the Second Amended Complaint does not expressly incorporate Exhibits A–F. It nevertheless repeatedly relies upon the October 17 police complaint and related communications as alleged protected activity. See Second Am. Compl. ¶¶ 47–61, 152, 230. The Court may consider documents central to a plaintiff's claim or sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

---

[1] Although the Court possessed subject-matter jurisdiction when this action commenced, Article III requires a live controversy at every stage of the litigation. See *Corrigan v. Boston University*, 98 F.4th 346, 351–52 (1st Cir. 2024) (federal judiciary authority to adjudicate cases extends only to live cases and controversies, not to those which are or have become moot). In resolving this jurisdictional question under Rule 12(b)(1), the Court may consider evidence outside the pleadings—including Exhibit A—without converting the motion into one for summary judgment. See *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363–65 (1st Cir. 2001) (the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties).

Plaintiff alleges that he resides in Littleton, New Hampshire, serves in the New Hampshire House of Representatives, and is the parent of a child enrolled at Whitefield Elementary School who receives services under an Individualized Education Program ("IEP"). Second Am. Compl. ¶¶ 9–12. He alleges that he accessed the school for parental purposes without restriction from September 2022 through October 23, 2025. *Id*. ¶¶ 19–25.

Plaintiff alleges that, on September 10, 2025, he emailed Superintendent Anastasia concerning the crosswalk and requested that the asserted obstruction cease. *Id*. ¶¶ 31–34. Superintendent Anastasia responded that afternoon. *Id*. ¶¶ 35–39.

Plaintiff further alleges that, on September 14, 2025, he filed Legislative Service Request 26-2717 concerning crosswalk obstructions, *Id*. ¶¶ 45–46, and that on October 17, 2025, he filed a complaint with the Whitefield Police Department and was informed that he could be arrested if he removed a cone. *Id*. ¶¶ 47–50.

Plaintiff alleges that, on October 17, 2025, he emailed the New Hampshire Department of Transportation concerning the crosswalk and copied Superintendent Anastasia. *Id*. ¶¶ 51–55. On October 20, 2025, he executed a sworn request for review addressed to the Whitefield Police Department. *Id*. ¶¶ 56–61.

Plaintiff alleges that on October 24, 2025, Superintendent Anastasia issued a "no-trespass order" against him, *Id.* ¶¶ 67-63, without notice, reason, explanation, authority, or process or opportunity to be heard. *Id.* ¶¶ 74-79. The no-trespass form and its addendum state that ***Plaintiff is permitted on school grounds for the limited purpose of transporting his child, provided he remains in his vehicle and does not enter the building.*** Ex. E.

Plaintiff alleges that District Policy KFA governs public conduct on school property and authorizes the Superintendent to issue "no trespass" letters. Second Amend. Compl. ¶¶ 95-108.

He alleges that he did not engage in any of the conduct described in Policy KFA, that the no-trespass order did not identify any such conduct, and that the Superintendent therefore acted beyond the authority provided by that policy. *Id.* ¶¶ 109-19.

Plaintiff further alleges that District Policy CHD applies to administrative action taken "in the absence of policy," and requires review and ratification by the School Board. *Id*. ¶¶ 120-28. Plaintiff also invokes Ed 204.01(a)(1), alleging that he requested a hearing after the restriction issued and that the School Board denied his request. *Id*. ¶¶ 129–33.

Plaintiff further alleges that on October 24, 2025, he sent a "Demand for Rescission or Written Justification of No-Trespass Order" to Superintendent Anastasia, Chief Maxwell Hodgdon, and members of the SAU 36 School Board. *Id.* ¶¶134-41. Further, that on November 6, 2025, he addressed the SAU 36 School Board during public session regarding the no-trespass order, ***and that the Board did not rescind or review the order***. *Id.* ¶¶280-84. On the same date, Whitefield Elementary School issued an email stating that signups for "Winter Wednesday" activities were to occur in person at the school, which he asserts prevented him from enrolling his daughter due to the no-trespass order. *Id*. ¶¶ 149-151.

As of the filing of the Second Amended Complaint, Plaintiff alleges that Defendants have not rescinded the no-trespass order. *Id*. ¶¶ 142-48; 204-08.

The related administrative proceedings have since advanced. On May 14, 2026, the School Board conducted an approximately ***seven-and-one-half-hour*** hearing concerning Plaintiff's challenge to the visitor restriction and issued a written decision on May 29, 2026. Plaintiff appealed that decision to the New Hampshire State Board of Education, and its decision remains pending.

## III. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (internal quotations and citations omitted). "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is ***inapplicable to legal conclusions***," and courts must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (emphasis added); see also *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 327 (1st Cir. 2016).

These principles apply with full force in § 1983 cases alleging unconstitutional motive. Conclusory allegations of intent, animus, or retaliation are not entitled to the presumption of truth and cannot, without supporting facts, state a plausible claim for relief. See *Iqbal*, 556 U.S. at 680–81.

As to the request for injunctive relief, mootness presents a question of subject-matter jurisdiction under Rule 12(b)(1). In resolving a factual jurisdictional challenge, the Court may consider materials outside the pleadings and resolve disputed jurisdictional facts. See *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363–65 (1st Cir. 2001). The controlling question is whether the requested relief would still make a difference to the parties' legal interests. *Corrigan v. Boston University*, 98 F.4th 346, 351–52 (1st Cir. 2024).

## IV. ARGUMENT

Even accepting Plaintiff's well-pleaded allegations as true for purposes of this motion, the Second Amended Complaint does not plead facts that state any plausible constitutional claim against Superintendent Anastasia or the District. Each count rests on conclusory assertions of motive, legal conclusions cast as factual allegations, or theories foreclosed by well-established law. The absence of factual allegations supporting unconstitutional motive, deprivation of a protected interest, differential treatment of a sufficiently similar comparator, or an actionable municipal policy or custom remains fatal. Accordingly, all counts should be dismissed.

### A. Count I (Procedural Due Process) Fails to State a Claim

Count I fails because the Second Amended Complaint does not identify any liberty or property interest. Without such an interest, Plaintiff was not entitled to federal procedural due process, regardless of whether Defendants followed the procedures he invokes.

#### i. Plaintiff has no protected liberty or property interest in unrestricted access to school property, regardless of how he characterizes his claim.

The Due Process Clause is "not a guarantee against incorrect or ill-advised [government] decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). It protects only against the deprivation of interests that qualify as "liberty" or "property" within the meaning of the *Fourteenth Amendment*. *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). Property interests are not created by the Constitution; they arise, if at all, from "rules or understandings" that secure an entitlement to a specific benefit. *Id.* at 577.

Plaintiff now alleges that the visitor restriction deprived him of liberty and property interests arising from his parental rights, N.H. Code Admin. R. Ed 204.01, and District Policies KFA and CHD. Second Am. Compl. ¶¶ 214–18. Neither the cited regulation nor the District



105354640.v2

policies confer an affirmative entitlement to enter school property. At most, they prescribe procedures governing administrative action or review, and an expectation of receiving process does not itself create a protected liberty or property interest. See *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). Absent a substantive entitlement, there is no cognizable interest in unrestricted access to school grounds. See *Roth*, 408 U.S. at 578 (no property interest where governing rules "secured absolutely no interest" in continued benefit or any statute, rule or policy that secured such a benefit).

Schools, moreover, may regulate entry into their buildings and adjacent grounds as part of their responsibility to maintain a safe and orderly educational environment. The Supreme Court has emphasized the "special characteristics of the school environment," recognizing that schools may impose reasonable restrictions to prevent disruptions to school activities. *Grayned v. City of Rockford*, 408 U.S. 104, 118–20 (1972). And when the government acts in its capacity as a property owner, it may limit access to its facilities to serve legitimate operational and safety interests. *Adderley v. Florida*, 385 U.S. 39, 47–48 (1966). Nothing in these cases suggests that members of the public—including parents—hold a constitutional entitlement to enter school buildings whenever they wish.

Here, Plaintiff does not allege that Defendants interfered with any recognized parental liberty interest. He does not allege that his custodial rights were altered, that he was ***prevented*** from making educational decisions for his child, or that he was barred from communicating with school personnel. The restriction concerns his physical access to Whitefield Elementary School and permits him to enter school grounds for pickup and drop-off while remaining in his vehicle. Second Am. Compl. ¶¶ 67–79. The Second Amended Complaint further acknowledges that the District arranged an IEP meeting at White Mountains Regional High School so that Plaintiff

could attend. *Id.* ¶¶ 300–06. A temporary, safety-related visitor limitation of this kind falls squarely within the type of routine access regulation that schools may impose and does not implicate a fundamental liberty interest.

ii. Plaintiff's "educational participation" allegations cannot supply a separate due-process interest and, to the extent they concern special-education participation, they fall within the IDEA's exclusive framework.

Plaintiff suggests that the visitor restriction interfered with his ability to participate in his child's education, including attendance at IEP meetings and enrollment in school activities. Second Am. Compl. ¶¶ 293–313. But neither the Constitution nor any statute creates a liberty or property interest in attending school events, entering school buildings in person, or participating in extracurricular programs such as "Winter Wednesday," using a preferred pickup procedure, or holding an IEP meeting at a particular location. Second Am. Compl. ¶¶ 149–51, 300–12. These are matters of school administration, not constitutional entitlements. The Supreme Court's parental-rights cases protect parents' authority to direct the upbringing and education of their children—not a right to physically enter school facilities or to participate in school programming in any particular manner. See, e.g., *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (recognizing a fundamental liberty interest in the care, custody, and control of one's children); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925) (holding that parents possess a liberty interest in directing their children's education); Compare *Grayned*, 408 U.S. at 118–20 (recognizing schools' authority to restrict access to maintain order), and *Adderley*, 385 U.S. at 47–48 (explaining that government may control access to its property).

To the extent Plaintiff reframes these allegations as interference with IEP-related participation, that theory is governed exclusively by the IDEA and is addressed in Count VI—not under the Fourteenth Amendment's Due-Process Clause.

This Circuit has expressly rejected attempts to repackage IDEA-related concerns as constitutional claims under § 1983 in order to bypass the IDEA's exclusive framework. *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 28–29 (1st Cir. 2006). To the extent Plaintiff relies on alleged interference with IEP-related participation to establish the protected interest required for a due-process claim, that reliance is misplaced: the IDEA—not the Fourteenth Amendment—governs such claims.

Because Plaintiff has not alleged the deprivation of a cognizable liberty or property interest, Count I should be dismissed.

### B. <u>Count II (First Amendment Retaliation) Fails to State a Plausible Claim for Relief</u>

Count II should be dismissed because the Second Amended Complaint does not plead facts supporting a plausible inference that Defendants acted with retaliatory intent. Plaintiff now lists asserted protected activities, alleges that Superintendent Anastasia knew of certain communications, and recites that his protected activity was a substantial or motivating factor. Those allegations are entirely conclusory. Although the Second Amended Complaint no longer expressly incorporates Plaintiff's sworn account of the October 17, 2025 incident, it expressly refers to and relies upon that statement as protected activity and as part of the causal sequence underlying Count II. Second Am. Compl. ¶¶ 47–50, 56–61, 230(c).

To state a First Amendment retaliation claim under § 1983, Plaintiff must allege facts showing that (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) his protected conduct was a substantial or motivating factor in that action. See *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012). At the pleading stage, causation requires allegations from which retaliatory intent is a reasonable, not speculative, inference—conclusory assertions of motive or intent are not accepted as true, and courts disregard "threadbare recitals

of the elements" supported by mere conclusory statements. *Iqbal*, 556 U.S. at 664. Consistent with that framework, the Supreme Court has reiterated that a First Amendment plaintiff must show a "causal connection" between the official's "retaliatory animus" and the alleged injury, and that the animus was a "but-for" cause of the adverse action. *Nieves v. Bartlett*, 587 U.S. 391, 399–400 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006).

Following these principles, the Second Amended Complaint does not plausibly allege that Plaintiff's protected activity was a substantial or motivating factor in the visitor restriction. The chronology pled in the Second Amended Complaint forecloses such an inference. Plaintiff alleges that he first raised concerns over the crosswalk with school staff in May 2025 and again in September 2025, Second Amend. Compl. ¶¶ 26-44, yet no action was taken in response to those communications. Plaintiff now alleges that Superintendent Anastasia knew of his September 10 correspondence and received the October 17 DOT email. *Id.* ¶¶ 31–44, 51–55, 234–35. But knowledge of protected activity, standing alone, does not plausibly establish that the activity caused the visitor restriction. Plaintiff alleges no statement by Superintendent Anastasia connecting the restriction to his speech, no threat of adverse action in response to that speech, and no other nonconclusory facts demonstrating retaliatory animus. His assertions that Defendants "escalated" restrictions, that the sequence of events "support[s]" retaliation, and that his protected activity was a substantial or motivating factor merely recite his preferred inference and the elements of the claim. *Id.* ¶¶ 152–57, 230–42. See D.B., 675 F.3d at 43.

The Second Amended Complaint also changes the manner in which Plaintiff describes the October 17 incident. The First Amended Complaint incorporated Plaintiff's sworn statement, in which he stated that he removed a cone to "restore access" to the crosswalk and was later warned that he could be arrested if he did so again. Compl., Ex. D ¶¶ 5, 8. The Second Amended

Complaint no longer expressly incorporates that statement and alleges only that Plaintiff did not remove or disturb a traffic-control device "after being instructed not to do so." Second Am. Compl. ¶ 77. That carefully limited allegation does not deny the earlier removal. More importantly, Plaintiff continues to rely upon the October 17 police complaint and warning as protected activity and as part of the alleged causal sequence. *Id*. ¶¶ 47–50, 230(c). The sworn statement describing that incident is therefore central to, and sufficiently referenced by, the Second Amended Complaint and may be considered without converting the motion into one for summary judgment. See *Watterson*, 987 F.2d at 3. One week later, on October 24, 2025, the District issued the visitor restriction. Second Am. Compl. ¶¶ 67–79. Given this sequence, the Court is not required to infer that the visitor restriction was issued because of Plaintiff's earlier emails or petitions to outside agencies, rather than his admitted interference with a student-safety measure the intervening October 17 traffic-control dispute. See *Iqbal*, 556 U.S. at 682 (where a complaint's allegations reveal an "obvious alternative explanation," allegations of unconstitutional motive are not plausible).

In applying that plausibility analysis, courts consider whether the complaint and the materials properly considered with it furnish an "obvious alternative explanation" for the challenged action—one that makes the plaintiff's theory of unconstitutional motive implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566–67 (2007); *Iqbal*, 556 U.S. at 682. Here, Plaintiff's claims expressly rely on the October 17 police complaint and the resulting warning, while the sworn statement underlying that complaint describes Plaintiff's removal of the traffic-control cone. Second Am. Compl. ¶¶ 47–50, 230(c); Ex. D ¶¶ 5, 8. That safety-related incident provides a straightforward, non-retaliatory reason for the District's visitor restriction, and under the governing pleading standard, this more natural explanation defeats Plaintiff's attempt to infer

retaliatory animus from ***timing alone***. Plaintiff cannot render the alternative explanation implausible merely by omitting from his latest pleading the document that his previous pleading expressly incorporated while continuing to rely on the same incident as a basis for relief.

Because the Second Amended Complaint and the materials properly considered with it disclose an obvious, legitimate reason for the visitor restriction and pleads no facts showing that Plaintiff's speech—rather than the October 17 school-safety dispute—drove the District's decision, Count II fails to allege causation. Count II must be dismissed.

### C. Count III (Post-Filing Retaliation) Fails for the Same Reasons as Count II

Count III, styled as "Post-Filing Retaliation," simply repackages the same no-trespass order and Defendants' alleged failure to rescind or modify it after this lawsuit was filed. Second Am. Compl. ¶¶ 243–57. Although Plaintiff identifies the filing of his original Complaint and motion for preliminary injunctive relief as protected activities, he alleges no new restriction, affirmative enforcement action, retaliatory statement, or other adverse action occurring after those filings. *Id*. ¶¶ 245–56. He alleges only that Defendants continued to maintain the restriction imposed before this litigation and did not rescind, justify, or modify it. *Id*. ¶¶ 249–56.

Because Count II fails to plausibly allege that the visitor restriction was imposed for a retaliatory reason, its continued enforcement after Plaintiff filed suit, without any separate retaliatory act, cannot support a separate retaliation claim. For that reason, Count III necessarily fails as well and should be dismissed.

### D. Count IV (Equal Protection) Fails to State a Plausible Claim for Relief

Count IV should be dismissed because, even accepting the Second Amended Complaint's well-pleaded factual allegations as true, Plaintiff has not plausibly pled the essential elements of

an equal protection violation. Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment. See *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state such a claim, a plaintiff must allege facts indicating that, "compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, ***intent to inhibit or punish the exercise of constitutional rights***, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909–10 (1st Cir.1995) (emphasis added).

In the absence of membership in a protected class, a "class-of-one" plaintiff bears the burden to allege that he was "***intentionally*** treated differently from others similarly situated and that there ***is no rational basis for the difference in treatment***." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (emphasis added). This Circuit has emphasized that the "similarly situated" requirement is demanding and that a plaintiff must identify comparators who are alike "in all relevant respects," not merely assert similarity in conclusory fashion. *Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (quotation omitted); see also *Cordi-Allen v. Conlon*, 494 F.3d 245, 250–52 (1st Cir. 2007) (at summary judgment, class-of-one plaintiff must show an "extremely high degree of similarity" between himself and comparators).

Measured against these standards, Plaintiff's equal protection allegations fall well short of plausibility under *Twombly* and *Iqbal*. The Second Amended Complaint now alleges, "on information and belief," that unidentified parents or visitors involved in "parking disputes, traffic interference, or verbal disagreements with staff" received informal administrative treatment rather than exclusion, trespass orders, or police enforcement. Second Am. Compl. ¶¶ 40, 271. But Plaintiff still identifies no actual comparator, incident, date, decisionmaker, prior warning,

degree of disruption, or other circumstances demonstrating that anyone was similarly situated ***to him*** in all relevant respects. A complaint cannot "drag a defendant past the pleading threshold" simply by invoking a "conclusory description of a general scenario which could be dominated by unpleaded facts." *Barrington Cove*, 246 F.3d at 8–9 (upholding Rule 12(b)(6) dismissal where plaintiff failed to allege similarity "with reasonable particularity" and the facts pled suggested reasonable grounds for different treatment) (quotation omitted). Plaintiff's generalized categories do not establish that another person engaged in conduct of comparable nature and severity, under comparable circumstances, yet received more favorable treatment from the same decisionmaker. That omission is fatal under the First Circuit's equal protection framework, which requires a plaintiff to "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (quotation omitted).

Crucially, the Second Amended Complaint and the documents properly considered with it supply an obvious, legitimate reason for the visitor restriction that defeats any inference of irrational or arbitrary discrimination. Plaintiff's own sworn statement acknowledges that, on October 17, 2025, while on school grounds, he removed a traffic cone to "restore access" to the crosswalk and was warned that he could be arrested if he removed a cone again. See Compl., Ex. D ¶¶ 5, 8 (Doc. 1). Although the Second Amended Complaint does not formally incorporate that statement, it expressly refers to and relies upon it as protected activity and as part of the alleged causal sequence. Second Am. Compl. ¶¶ 47–50, 56–61, 230(c). The Court therefore may consider the undisputedly authentic statement in full. See Watterson, 987 F.2d at 3. Thereafter, on October 24, 2025, the District issued the visitor restriction. Second Am. Compl. ¶¶ 67–79. Those allegations, taken together, describe non-expressive conduct directly implicating student

safety and campus management. Where the pleadings disclose "entirely reasonable grounds" that could provide a rational basis for the classification, for differential treatment, ***it is not necessary to wait for further factual development*** [of the record]. *Barrington Cove Ltd.*, 246 F.3d at 8–9. Likewise, here, a school administrator's decision to restrict access by a parent who has interfered with a traffic control device during arrival and dismissal ***is rational on its face*** and readily satisfies the deferential rational-basis standard applicable to class-of-one claims. See *Olech*, 528 U.S. at 564.

The Equal Protection Clause does not constitutionalize every dispute over how visitor restrictions are applied, especially where the pleadings and documents properly considered with them disclose a rational basis for the decision and allege no concrete facts showing that anyone similarly situated was treated more favorably. Because Count IV identifies no actual comparator, pleads no facts supporting discriminatory intent or irrationality, and discloses an obvious legitimate justification for the challenged action, it fails to state a plausible claim for relief and should be dismissed under Rule 12(b)(6).

### E. <u>Count V (*Monell* Liability) Fails to State a Claim</u>

Count V must be dismissed because the Second Amended Complaint does not plausibly allege municipal liability under *Monell*. Municipalities are liable under § 1983 only for actions that represent the municipality's own official policy or custom—not merely because they employ an alleged constitutional tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). As the Supreme Court clarified in *Pembaur* and *Praprotnik*, a single decision can constitute municipal "policy" only where:

> (1) the act is one for which the municipality itself is actually responsible—i.e., it was officially sanctioned or ordered;
> (2) the decision was made by an official who possesses final policymaking authority in that specific area of municipal business; and



105354640.v2

(3) whether an official has final policymaking authority is determined by state law, not by job title or general administrative responsibilities.

See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

The Second Amended Complaint identifies two District policies—KFA and CHD—but neither supports municipal liability. Plaintiff affirmatively alleges that Policy KFA governs when a no-trespass order may issue, and he contends that he did not engage in any conduct covered by that policy. Second Am. Compl. ¶¶ 95–119, 286–87. By Plaintiff's own theory, the Superintendent therefore acted contrary to KFA, not pursuant to District policy. An alleged deviation from written policy does not establish that the policy itself caused the asserted constitutional violation.

Plaintiff also cites District Policy CHD, arguing that it required the School Board to "ratify" the no-trespass order because it was issued "in the absence of policy." Second Am. Compl. ¶¶ 120–28, 283–85. But that assertion contradicts his allegation that Policy KFA governs such orders. And in any event, Plaintiff's allegations that the Board did not rescind the restriction or direct its review do not establish *Monell* ratification: ratification requires that an authorized policymaker approve the challenged decision and its basis, not silence or inaction. See *Praprotnik*, 485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final"). Plaintiff's assertion that the Board's inaction "constitutes ratification," Second Am. Compl. ¶ 285, is a legal conclusion, not a well-pleaded fact.

The Second Amended Complaint now labels Superintendent Anastasia a "final policymaking" and asserts that Defendants acted through "final policymakers." *Id.* ¶¶ 189, 273, 275, 292. Those labels do not establish that she possessed final policymaking authority for the

District with respect to visitor-restriction decisions. At most, the Second Amended Complaint describes the exercise of operational discretion in a school-safety matter, which is insufficient to transform an individual administrator's decision into "District policy" under *Monell*. Final policymaking authority is determined by state law and the relevant allocation of authority—not by Plaintiff's characterization of an official or the fact that the official exercised discretion in a particular instance. See *Praprotnik*, 485 U.S. at 124–27.

Plaintiff also recites that the denial of hearings and use of no-trespass orders without process constituted a "custom or practice." Second Am. Compl. ¶ 291. But the pleaded facts describe only a one-off, allegedly unauthorized decision in response to a specific incident—not an official policy, a longstanding custom, or a failure-to-train or supervision theory of the type addressed in *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011). Plaintiff identifies no other person subjected to the alleged practice, no other no-trespass order issued without process, and no facts showing a widespread or persistent course of conduct. A conclusory reference to a "custom or practice" cannot convert Plaintiff's single experience into an actionable municipal custom.

The *Monell* claim also fails for the independent reason that Plaintiff has not adequately pled any underlying constitutional violation. As explained above, Counts I–IV do not state viable claims for procedural due process, First Amendment retaliation, post-filing retaliation, or equal protection. ***Without a predicate constitutional violation, there can be no municipal liability under § 1983***. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Second Amended Complaint alleges neither a municipal policy or custom that caused a constitutional injury nor a constitutional violation attributable to such a policy, Count V fails as a matter of law and should be dismissed.

### F. Count VI Fails to State a Claim

Count VI of the Second Amended Complaint asserts a standalone claim under the IDEA based on allegations that the visitor restriction interfered with Plaintiff's parental participation in the IEP process. Second Am. Compl. ¶¶ 293–313. Plaintiff now emphasizes that he does not seek relief for denial of a free appropriate public education ("FAPE"), but instead alleges interference with parental participation and procedural safeguards. *Id.* ¶ 294. Even accepting his well-pleaded factual allegations as true, the claim fails for two independent reasons.

First, IDEA claims must be administratively exhausted. Congress requires that a plaintiff exhaust the prescribed administrative procedures before filing a civil action "seeking relief that is also available" under the IDEA. 20 U.S.C. § 1415(l). Whether exhaustion is required turns on the "substance" or "gravamen" of the claim, not the label the plaintiff chooses. See *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165–69 (2017). Where, as here, a plaintiff asserts a standalone IDEA claim alleging interference with IDEA-created rights to parental participation in IEP meetings and procedural safeguards, the claim falls squarely within the IDEA's remedial scheme and must be pursued, if at all, through the administrative process.

Plaintiff does not allege that he invoked, much less exhausted, any IDEA administrative procedures. His alleged request for a hearing under N.H. Code Admin. R. Ed 204.01 regarding the visitor restriction is not an IDEA due-process complaint and does not satisfy the IDEA's exhaustion requirement. See Second Am. Compl. ¶¶ 129–33. Instead, Count VI seeks to bypass that process and obtain judicial relief directly for alleged violations of IDEA's parental participation provisions, 20 U.S.C. § 1415(b)(1); 34 C.F.R. §§ 300.322, 300.501(b). **Second Am. Compl. ¶¶ 293–313. Plaintiff's disclaimer of a FAPE claim does not avoid exhaustion because Count VI expressly seeks relief for rights and procedural safeguards created by**

**the IDEA itself**. Because Plaintiff has not exhausted the IDEA's administrative remedies, Count VI must be dismissed.

Second, even if exhaustion were excused, the Second Amended Complaint does not plausibly allege a violation of IDEA's parental participation requirements. The IDEA obligates school districts to ensure that parents are afforded the "opportunity to participate in meetings with respect to the identification, evaluation, and educational placement of the child." 20 U.S.C. § 1415(b)(1); 34 C.F.R. §§ 300.322, 300.501(b). The Second Amended Complaint acknowledges that, ***after the visitor restriction, the District scheduled and held an IEP meeting for Plaintiff's daughter*** on November 13, 2025, and that the meeting was held at White Mountains Regional High School—approximately six miles from Whitefield Elementary School—so that Plaintiff could attend. Second Am. Compl. ¶¶ 300–06. Plaintiff does not allege that he was prevented from attending that meeting, that he was excluded from the IEP team, or that he was denied notice or an opportunity to be heard regarding his daughter's identification, evaluation, or placement.

Count VI instead alleges that relocating the meeting burdened Plaintiff and that the visitor restriction interfered with his ability to participate in school activities and respond to circumstances involving his child. Second Am. Compl. ¶¶ 300–13. Plaintiff also alleges that, in December 2024, he requested permission to park and walk his child to the school entrance because of her anxiety and transition difficulties. *Id*. ¶¶ 62–66. But he does not allege that this pickup request concerned an IEP meeting or any decision involving identification, evaluation, educational placement, or special-education services. Those allegations describe practical inconveniences flowing from a visitor restriction; they do not amount to a denial of the opportunity to participate in IEP meetings or other core IDEA processes.

Because Plaintiff has neither exhausted IDEA's exclusive administrative process nor pled facts showing that SAU 36 denied him the opportunity to participate in his child's IEP meetings or protected decision-making processes, Count VI fails to state a claim upon which relief can be granted and should be dismissed.

### G. <u>Count VII (Declaratory and Injunctive Relief) Fails Derivatively</u>

Count VII is moot. The Second Amended Complaint alleges that the visitor restriction remains in effect and seeks declarations that the restriction is unlawful, an order requiring its rescission, and an injunction prohibiting its enforcement. See Second Am. Compl. ¶¶ 314–23. After the Second Amended Complaint was filed, however, the School Board rescinded the Notice Against Trespass and Addendum in their entirety, effective August 30, 2026. See Ex. A. Plaintiff is therefore no longer subject to the challenged restriction, and the requested prospective relief would have no present legal effect. See *Corrigan v. Boston University*, 98 F.4th 346, 351–52 (1st Cir. 2024).

The voluntary-cessation doctrine does not preserve a live controversy. The rescission was formally authorized by the School Board and communicated to the Whitefield Police Department; it removed the restriction in its entirety, imposed no continuing conditions, and restored Plaintiff's access on the same terms applicable to others. See Ex. A. Superintendent Anastasia has also left the District, and nothing suggests that the rescinded restriction will be reinstated. These circumstances establish that the challenged conduct cannot reasonably be expected to recur. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189–90 (2000); *Corrigan*, 98 F.4th at 352–55. Count VII should therefore be dismissed without prejudice under Rule 12(b)(1).

Alternatively, Count VII should be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent cause of action; it provides a remedy only where a plaintiff has stated a viable underlying claim. See *Skelly Oil Co. v. Phillips Petroleum* Co., 339 U.S. 667, 671–72 (1950) (the Act is procedural and does not enlarge jurisdiction or create substantive rights). Injunctive relief likewise is a remedy, not an independent cause of action. Because Plaintiff has not plausibly alleged an underlying constitutional or statutory violation, his requests for declarations that the visitor restriction is unlawful and for an injunction requiring its rescission cannot proceed independently. See Second Am. Compl. ¶¶ 314–23.

Accordingly, Count VII should be dismissed without prejudice as moot or, alternatively, dismissed under Rule 12(b)(6).

### H. <u>Superintendent Anastasia is Entitled to Qualified Immunity</u>

Finally, even if Plaintiff had stated a constitutional violation—which he has not—Superintendent Anastasia is independently entitled to qualified immunity. "Qualified immunity is a doctrine that shields government officials from individual-capacity suits for damages under § 1983 'when they made a decision that, even if constitutionally deficient, reasonably misapprehended the law governing the circumstances they confronted.'" *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021) (quoting *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). Accordingly, government officials, "are immune from such suits unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Id*. (quoting *Irish v. Fowler*, 979 F.3d 65, 73 (1st Cir. 2020)).

The "clearly established" requirement is satisfied when: (a) "the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right,"; and (b) "in the particular factual context of the case, a

reasonable officer would have understood that his conduct violated the right." *Stamps v. Town of Framingham*, 813 F.3d 27, 34 (1st Cir. 2016) (quoting *Mlodzinski v. Lewis*, 648 F.3d 24, 32-33 (1st Cir. 2011)). Although a "case directly on point" is unnecessary to pierce qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

The Second Amended Complaint arises from a limited visitor restriction issued following the October 17, 2025 traffic-control dispute. Although it no longer expressly incorporates Plaintiff's sworn account, it refers to and relies upon that statement, which acknowledges that Plaintiff removed the cone and was warned against repeating that conduct. Second Am. Compl. ¶¶ 47–50, 56–61; see Compl., Ex. D ¶¶ 5, 8 (Doc. 1); Watterson, 987 F.2d at 3. Nothing in Plaintiff's allegations identifies any clearly established constitutional right to unrestricted physical access to school property after a safety-related incident, to pre-deprivation notice or a hearing before such a visitor restriction issues, to have an IEP meeting conducted at a particular school building, or to have state procedures and District policies treated as federally protected entitlements. Nor does Plaintiff identify precedent establishing that maintaining such a restriction, without a sufficiently similar comparator or facts demonstrating retaliatory animus, violates the First Amendment, the Due Process Clause, or the Equal Protection Clause. On these allegations, a reasonable school administrator could not have understood that issuing or maintaining a limited visitor restriction under these circumstances was unconstitutional.

Although qualified immunity is sometimes resolved at summary judgment, dismissal under Rule 12(b)(6) is appropriate where— as here—the complaint provides all the facts needed to assess the plaintiff's claim. *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). Because the Second Amended Complaint alleges no violation of clearly established law,



105354640.v2

Superintendent Anastasia is entitled to qualified immunity from Plaintiff's individual-capacity claims for damages.

## I. <u>CONCLUSION</u>

For all of the reasons set forth above, the Second Amended Complaint fails to state any plausible constitutional or statutory claim against either Superintendent Anastasia or the District. Its new allegations principally characterize the same events and recite legal conclusions concerning motive, protected interests, comparators, and policymaking authority. The Second Amended Complaint and the materials properly considered with it describe a limited visitor restriction following the October 17, 2025 traffic-control dispute—not retaliation for protected speech, deprivation of a constitutionally protected liberty or property interest, irrational differential treatment, or implementation of an actionable municipal policy or custom. Plaintiff's IDEA allegations likewise fail because he did not exhaust the statute's administrative procedures and does not allege that he was denied the opportunity to participate in his child's IEP process. In the absence of a viable underlying constitutional, Plaintiff's *Monell* theory and his request for declaratory and injunctive relief likewise fails derivatively.

Count VII is also independently moot. After the Second Amended Complaint was filed, the School Board rescinded the Notice Against Trespass and Addendum in their entirety, effective August 30, 2026. See Ex. A. Plaintiff is therefore no longer subject to the challenged restriction, and the requested prospective relief would have no present legal effect. Count VII should accordingly be dismissed without prejudice under Rule 12(b)(1).

Additionally, even if the Court were to conclude that the Second Amended Complaint alleges a constitutional violation, Superintendent Anastasia is entitled to qualified immunity from Plaintiff's individual-capacity claims for damages because no clearly established law would have

put a reasonable school administrator on notice that imposing or maintaining a limited visitor restriction in these circumstances was unconstitutional.

Accordingly, Defendants White Mountains Regional School District (SAU 36) and Superintendent Marion Anastasia respectfully request that the Court grant their renewed motion and dismiss all claims asserted against them, with prejudice.

Respectfully submitted,

WHITE MOUNTAINS REGIONAL SCHOOL
DISTRICT (SAU 36) AND
SUPERINTENDENT MARION ANASTASIA

MORRISON MAHONEY LLP

By /s/ *Adam R. Mordecai*

Adam R. Mordecai, #17727
amordecai@morrisonmahoney.com
R.J. Meurin, #266219
rmeurin@morrisonmahoney.com
Center of New Hampshire Office Tower
650 Elm Street, Suite 201
Manchester, NH 03101
Phone: 603-622-3400
Fax: 603-622-3466

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following persons on this date in the manner specified herein:

/s/ Adam R. Mordecai
Adam R. Mordecai, #17727