**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

**JOSEPH J. BARTON,**

Plaintiff,

v.

**TOWN OF WHITEFIELD, NEW HAMPSHIRE,** et al.,

Defendants.

No. 1:25-cv-00451-LM-TSM

**PLAINTIFF'S CONSOLIDATED OBJECTION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**NOW COMES** the Plaintiff, Joseph J. Barton, appearing pro se, and respectfully objects to Defendants Marion Anastasia and White Mountains Regional School District (SAU 36)'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 35), and Defendants Town of Whitefield, Whitefield Police Department, and Chief Maxwell Hodgdon's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 36). For the reasons set forth below, both Motions should be denied.

## I. INTRODUCTION

Defendants' motions ask this Court to resolve, on the pleadings, a set of <u>**disputed**</u> factual inferences that Rule 12(b)(6) reserves for discovery and, ultimately, for the factfinder. The School District Defendants repeatedly invite the Court to credit their preferred characterization of the

October 17, 2025 incident, drawn from materials outside the four corners of the operative complaint, as the "*obvious alternative explanation*" foreclosing any inference of retaliatory motive. The Whitefield Defendants likewise attempt to isolate their police-enforcement role from the same challenged order, treating their involvement as categorically passive and legally irrelevant. Both arguments depend on Defendants' factual framing, not on the allegations of the Second Amended Complaint.

The Second Amended Complaint does not simply recite legal conclusions. It pleads a detailed chronology in which Superintendent Anastasia issued a police-enforced exclusion order against Plaintiff four days after Plaintiff executed a sworn request for outside review concerning the school's crosswalk practice and related law-enforcement conduct, without any contemporaneous notice, explanation, or opportunity to be heard, and in the face of Policy KFA's own limitations on when such an order may issue.

**Defendants' own submissions undercut several of their strongest arguments**. Their mootness argument rests on a rescission that occurred on August 18, 2026, more than nine months after the order issued, after a full round of motion practice, after the Magistrate Judge's Report and Recommendation, and mere days before Defendants' response deadlines. Their ratification argument ignores that the School Board itself convened a seven-and-one-half-hour hearing on May 14, 2026, and issued a written decision on May 29, 2026, upholding the very order Plaintiff challenges, which is the paradigmatic case of a policymaker approving both a subordinate's decision and its basis. See *City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).* Each of these facts cuts against dismissal, not toward it.

Plaintiff's retaliation theory also is not limited to Defendants' present litigation label of a traffic-control dispute. The later administrative record reflects that the District’s asserted justification included alleged videotaping on school property, staff “discomfort,” and subjective

staff reports. To the extent Plaintiff refers to the March 19, 2026 State Board Final Order (**Exhibit AB**), the May 29, 2026 Board Decision Letter (**Exhibit AE**), or selected administrative-hearing transcript excerpts (**Exhibits AF-AH**), he does so for the limited purpose of showing what reasons Defendants asserted, what proceedings occurred, what administrative actions were taken, and why Defendants' present motions depend on disputed factual characterizations, not to ask the Court to resolve disputed facts on a Rule 12(b)(6) motion.

## II. STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6**), the Court must accept all well-pleaded factual allegations as true** and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).* A complaint survives if it states a claim to relief that is plausible on its face, a standard that asks for more than a sheer possibility, but does not require the plaintiff to plead facts that make his claim probable or to rule out every conceivable innocent explanation for the defendant's conduct. **Iqbal, 556 U.S. at 678**. Plausibility is a context-specific inquiry that draws on judicial experience and common sense, and it is particularly ill-suited to resolution at the pleading stage where, as here, the operative facts, the timing of internal deliberations, the reasoning behind a discretionary decision, the treatment of similarly situated third parties, and the content of one-sided staff and law-enforcement reports lie almost entirely within Defendants' possession and will only be developed through discovery.

On the Rule 12(b)(1) mootness challenge to Count VII, Defendants bear a heavy burden. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).* Voluntary cessation of challenged conduct moots a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. Id. Courts are appropriately skeptical

of mootness arguments premised on cessation that occurs after litigation has commenced and in apparent response to litigation pressure, precisely because a defendant who rescinds under pressure remains free to reinstate once the case is dismissed. **Id. at 189-91**.

Plaintiff requests that the Court take judicial notice, under Federal Rule of Evidence 201, of the existence, procedural posture, and contents of the related State Board administrative proceedings concerning the same no-trespass order. Those materials include the March 19, 2026 State Board Final Order requiring a local hearing (Exhibit AB), the May 29, 2026 Board Decision Letter upholding the order after that hearing (Exhibit AE), and selected transcript excerpts from the May 14, 2026 local hearing (Exhibits AF-AH). Plaintiff does not ask the Court to accept disputed testimony from those materials as true to defeat Rule 12(b)(6). Rather, Plaintiff cites Exhibits AB and AE-AH, where referenced, to show the existence, contents, and procedural posture of materials Defendants referenced, relied upon, placed at issue, or used to support their current factual framing. Plaintiff does not rely on these exhibits to amend the Second Amended Complaint or to supply missing pleading elements; the exhibits are offered only to rebut Defendants' effort to obtain dismissal by asking the Court to accept their own factual characterization of disputed events. To the extent the Court declines to consider any administrative-record material at this stage, Plaintiff's opposition rests independently on the allegations of the Second Amended Complaint, **which must be accepted as true.**

## III. THE SECOND AMENDED COMPLAINT ALREADY PASSED RULE 15 FUTILITY REVIEW

The Second Amended Complaint was filed after amendment practice and judicial review. In recommending leave to amend, the Court necessarily declined to deny amendment as futile at that stage. Futility under Rule 15 is assessed under the same legal sufficiency standard applicable to Rule 12(b)(6). *Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).* Plaintiff does

not contend that Defendants are categorically barred from filing renewed Rule 12 motions directed at the operative pleading. But the procedural posture matters because Defendants now largely repackage legal-insufficiency arguments directed at a pleading the Court already allowed to become operative.

## IV. ARGUMENT

### A. Count I (Procedural Due Process) States a Plausible Claim

Defendants argue that Ed 204.01 and Policies KFA and CHD create, at most, procedural entitlements that cannot themselves give rise to a protected liberty or property interest, relying on *Olim v. Wakinekona, 461 U.S. 238, 250 n.12 (1983)*. But that principle applies where the cited rules merely dictate the process an official must follow; **it does not apply where, as Plaintiff alleges, the rules also cabin the substantive circumstances under which the deprivation may occur in the first place**. Second Am. Compl. ¶¶ 95-108. Plaintiff alleges that Policy KFA identifies specific categories of conduct that may trigger a no-trespass order, and that his conduct did not fall within any of them, meaning the order was not merely procedurally irregular but substantively unauthorized. Id. ¶¶ 109-19. That is a materially different theory than the one Olim addresses, and Defendants cannot have it both ways by arguing, for Monell purposes, that Superintendent Anastasia acted contrary to KFA while simultaneously arguing, for due-process purposes, that KFA imposed no substantive limits at all.

Defendants' reliance on *Grayned v. City of Rockford, 408 U.S. 104 (1972), Adderley v. Florida, 385 U.S. 39 (1966), Pitta v. Medeiros, 90 F.4th 11 (1st Cir. 2024), Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999), Ware v. Cranston Public Schools, 2025 U.S. Dist. LEXIS 103504 (D.R.I. 2025)*, and similar school-access cases is misplaced at the pleading stage. Those cases confirm that schools may impose reasonable, content-neutral access restrictions and that parents

do not have a freestanding right to roam school property at will. They do not hold that a school may impose an individualized, police-enforced exclusion order against a specific parent, backed by threat of arrest, without notice or any opportunity to be heard, consistent with due process regardless of the circumstances.

Defendants' reliance on Pitta is particularly misplaced. Pitta presented a First Amendment claim about a parent's asserted right to video-record a private IEP meeting; the First Circuit never reached, and had no occasion to reach, any due-process holding about physical access to school property. Pitta therefore supplies no due-process authority at all, let alone authority addressing a police-enforced exclusion order imposed without notice or a hearing. Whether the restriction Plaintiff challenges was the kind of routine, reasonable regulation those cases contemplate, or instead an individually targeted deprivation triggered by protected activity and unmoored from Policy KFA's own terms, is precisely the factual question Rule 12(b)(6) does not permit the Court to resolve against Plaintiff.

The pleaded due-process violation is strengthened by the manner in which the order allegedly issued. Plaintiff alleges that Superintendent Anastasia did not include him in the investigation, did not obtain his account, did not provide notice of the specific allegations, and relied on secondhand or thirdhand information. The alleged information chain included Officer Laska, who did not personally witness the alleged conduct forming part of the asserted basis. A police-enforced exclusionary order issued on that basis, without notice, stated reasons, or an opportunity to respond, plausibly alleges constitutionally inadequate process.

Defendants' unrestricted-access framing also ignores the actual administrative posture. Plaintiff invoked Ed 204.01 because the no-trespass order threatened legal rights, duties, or privileges connected to his role as a parent. The dispute was not abstract public access to school property. It involved an individualized no-trespass order limiting Plaintiff's ability to be present at

his child's school, participate in routine parent-school interactions, respond to child-related needs, and exercise school-related parental responsibilities. The March 19, 2026 State Board Final Order required the local board to grant the parent's request for a hearing and conduct a hearing on the no-trespass notice that complied with state law. (Exhibit AB.) That administrative posture reinforces, at minimum, that Plaintiff's claim is not a demand for unfettered access but a claim for process before a parent is subjected to a police-enforced exclusionary order affecting parental participation.

Nor does *Diaz-Fonseca v. Puerto Rico, 451 F.3d 13 (1st Cir. 2006),* require dismissal of Count I to the extent it touches on Plaintiff's educational-participation allegations. Diaz-Fonseca forecloses repackaging a denial of FAPE as a freestanding constitutional claim; it does not foreclose a due process claim grounded in a police-enforced exclusion from school property based on non-FAPE, non-IDEA administrative procedures. Ed 204.01 and Policies KFA and CHD are generally applicable governance provisions, not IDEA-specific safeguards. Plaintiff's participation allegations are relevant context showing the practical severity of the deprivation; they are not the sole source of the protected interest.

**B. <u>Count II (First Amendment Retaliation) States a Plausible Claim</u>**

Defendants ask the Court to import materials outside the Second Amended Complaint and treat them as conclusively establishing an obvious alternative explanation under Iqbal that defeats any inference of retaliatory animus. This overreads Iqbal. The obvious-alternative-explanation doctrine applies where the facts pleaded are equally or more consistent with lawful conduct than with the unlawful conduct alleged, rendering the inference of unlawful motive implausible on its face. **Iqbal, 556 U.S. at 682**. It is not a vehicle for a court to weigh two competing, plausible explanations against each other and select the one a defendant prefers. That weighing is the function of a factfinder, not a motion to dismiss.

Here, the Second Amended Complaint alleges that Plaintiff engaged in a sustained course of protected activity: emails to Superintendent Anastasia, a Legislative Service Request, a complaint to the Whitefield Police Department, correspondence with the New Hampshire Department of Transportation, and a sworn request for outside review concerning the school and law-enforcement conduct. It alleges that the no-trespass order issued four days after the last of these acts and after months in which Plaintiff accessed school grounds without comparable restriction. Second Am. Compl. ¶¶ 19-25, 31-61, 67-79.

That chronology, together with Superintendent Anastasia's alleged contemporaneous knowledge of the communications, is sufficient at the pleading stage to support a reasonable inference of causation. Whether the October 17 incident actually was the true and sufficient cause of the order, as opposed to a pretext seized upon after the fact, is a classic disputed factual question that turns on evidence not yet before the Court, including what Defendants knew, when they knew it, what they relied upon, and what motivated their decision.

Defendants' traffic-control framing is also incomplete. The materials Defendants rely upon and the later administrative record show that the asserted basis for the no-trespass order was not limited to a simple traffic-cone incident, but involved disputed issues concerning recording, staff perceptions, witness reports, and law-enforcement involvement. Plaintiff cites those materials only to show why Defendants' preferred factual narrative is disputed and unsuitable for resolution under Rule 12, not to add un-pleaded facts to the Second Amended Complaint.

<u>The Second Amended Complaint further alleges facts supporting pretext and retaliatory motive</u>: Superintendent Anastasia

1. did not include Plaintiff in the investigation,
2. did not obtain his account before issuing the order,
3. did not identify the specific conduct or policy subsection in the order, and

4. relied on one-sided information that included secondhand or thirdhand reports from staff and law enforcement.

A restriction issued shortly after protected complaints, based on one-sided reports, without Plaintiff's account, and later justified by reference to videotaping and subjective staff concerns plausibly supports retaliatory motive.

The selected Plumley and Dubreuil excerpts further show why Defendants' factual narrative is not suitable for Rule 12 resolution. The asserted basis included hearsay reports, subjective staff perceptions, and disputed traffic-control practices, including staff direction of vehicles during the same pickup/drop-off conditions Defendants now describe as an obvious safety justification. (Exhibit AG.) Plaintiff does not ask the Court to resolve those disputes now. The point is that Defendants' preferred factual narrative is disputed and fact-bound.

**Defendants' argument also proves too much.** If a single instance of assertedly non-expressive conduct occurring during a chronology of protected activity were sufficient, standing alone, to defeat a retaliation claim as a matter of law, virtually no retaliation claim against a government actor could survive a motion to dismiss, since defendants can almost always point to some contemporaneous non-expressive conduct by the plaintiff.

*Nieves v. Bartlett, 587 U.S. 391 (2019)*, on which Defendants rely, addressed retaliatory-arrest claims and the distinct role probable cause plays in that context. It does not establish a general rule that any contemporaneous safety-related justification defeats causation as a matter of law in a non-arrest retaliation claim.

### C. Count III (Post-Filing Retaliation) States a Distinct Claim

Defendants argue Count III fails for the same reasons as Count II and, independently, because Plaintiff alleges no new restriction after he filed suit. Second Amended Complaint ¶¶ 243-57 alleges more than passive inaction: it alleges that, after Plaintiff filed his original Complaint

and moved for preliminary injunctive relief, Defendants were on notice of the constitutional infirmities in the order, were specifically asked to rescind it, and made the deliberate choice to continue enforcing it against Plaintiff throughout the pendency of litigation, including through the May 14, 2026 Board hearing that expressly reaffirmed the restriction rather than lifting it. That is a decision, not mere silence, and it is a decision made with full knowledge of the pending litigation and Plaintiff's stated legal objections. Continued enforcement of a restriction in the face of a pending lawsuit challenging it, where a defendant elects at a formal hearing to reaffirm rather than rescind, is sufficiently distinct from the initial decision to support an independent retaliation theory tied to the litigation activity itself, particularly given the proximity between Plaintiff's requests for preliminary relief and the Board's May 29, 2026 written decision declining to disturb the order.

**D. <u>Count IV (Equal Protection) States a Plausible Claim at the Pleading Stage</u>**

Defendants are correct that *Barrington Cove Ltd. P'ship v. Rhode Island Housing & Mortgage Finance Corp., 246 F.3d 1 (1st Cir. 2001)*, requires more than a bare assertion of disparate treatment. But Rule 8 does not require a plaintiff to plead a comparator's name, address, and case file before discovery has occurred, particularly where, as here, the very information needed to identify comparators, including which parents received informal warnings versus formal exclusion orders and on what basis, is maintained in Defendants' own administrative records. Second Am. Compl. ¶¶ 40, 271 allege a specific, non-generic category of comparable conduct, parking disputes, traffic interference, and verbal disagreements with staff, and allege that individuals engaged in that conduct received informal treatment rather than exclusion. That is materially more specific than the wholly generic conclusory description rejected in Barrington Cove, and it is the kind of allegation that should proceed to discovery, where comparator evidence can be tested through District and Town records rather than demanded without discovery at the pleading stage.

Defendants again invoke their preferred traffic-control explanation as a rational basis. But that argument depends on resolving disputed facts in Defendants' favor. Plaintiff alleges that the order did not identify that conduct as the basis, did not cite a policy subsection, did not cite a statute, did not include findings, and was later justified through videotaping allegations, staff concerns, and post-hoc materials. At Rule 12, those allegations plausibly support unequal treatment or, at minimum, preclude dismissal based on Defendants' preferred rational-basis narrative.

**E. <u>Count V (Monell Liability) States a Plausible Claim Against SAU 36 and the Town</u>**

The School District Defendants argue that inaction cannot constitute ratification under Praprotnik because ratification requires an authorized policymaker to approve both the challenged decision and its basis. 485 U.S. at 127. Plaintiff agrees with that legal standard, and **Defendants' own Memorandum supplies the facts that satisfy it.** Defendants represent to this Court that on May 14, 2026, the School Board conducted an approximately seven-and-one-half-hour hearing concerning Plaintiff's challenge to the visitor restriction and issued a written decision on May 29, 2026 upholding it. The Board Decision Letter confirms that the Board voted 4-0 to uphold the Administration's no-trespass decision after considering the May 14, 2026 hearing evidence. (Exhibit AE.) That is not silence or inaction; it is precisely what Praprotnik describes as ratification: the Board, as the District's final policymaking body, conducted an extensive hearing on the merits of Superintendent Anastasia's decision and affirmatively approved both the decision and the basis for it in a written decision. Praprotnik, 485 U.S. at 127. Defendants cannot rely on the existence of that hearing to argue mootness and administrative adequacy elsewhere in their motions while simultaneously asking the Court to disregard it for ratification purposes.

The team-decision allegations also support Monell liability. Plaintiff alleges that the order was not an isolated unilateral act by a single administrator. The selected Laska and Anastasia

transcript excerpts, if judicially noticed or considered for the limited purpose identified above, reflect that Officer Laska admitted the decision was a group/**team decision** and that he was part of the team, and that Superintendent Anastasia testified she was asked to sign the order and did not obtain Plaintiff's position before issuance. (Exhibit AF.) Defendants themselves also represent that the School Board later conducted a seven-and-one-half-hour hearing and issued a written decision concerning the same restriction. Those facts, at minimum, make final policymaker involvement, ratification, police-school coordination, and municipal responsibility fact-intensive issues inappropriate for dismissal at the pleading stage.

The Whitefield Defendants argue that Plaintiff has not identified a Town policy or custom and that the Town's role was limited to Chief Hodgdon's alleged enforcement. But Plaintiff's theory is not that the Town is liable merely because the Police Department existed in the background. Plaintiff alleges a police-backed exclusion order issued on a Whitefield Police Department form, threatened criminal enforcement under RSA 635:2, and was served, communicated, enforced, or maintained through Whitefield law-enforcement authority. He further alleges that Chief Hodgdon was copied on Plaintiff's sworn communication concerning the school's crosswalk practice and related law-enforcement conduct, that the order issued days later, and that the Whitefield Defendants knowingly enforced and maintained it despite Plaintiff's objections. Those allegations plausibly connect the Town and its law-enforcement officials to the challenged deprivation.

Whether final policymaking authority over visitor-restriction decisions rests with the Superintendent, the School Board, the Police Chief, the Town, or some combination of those actors cannot be resolved by Defendants' say-so in memoranda of law. The relevant inquiry turns on New Hampshire law, municipal practice, police authority, District governance documents, Policies KFA and CHD, the use of police forms, the threat of arrest under RSA 635:2, and the actual

coordination between school and police officials. Those issues require factual development and are not suitable for dismissal at the pleading stage.

### F. <u>The Second Amended Complaint States Plausible Claims Against the Town of Whitefield and Chief Hodgdon</u>

The Whitefield Defendants argue that the Second Amended Complaint alleges only passive enforcement of a school-issued order. That misstates the pleaded theory and improperly separates the police role from the challenged deprivation. Plaintiff does not allege that the Town and Chief Hodgdon are liable merely because Plaintiff copied Chief Hodgdon on correspondence. Plaintiff alleges that the no-trespass order was issued on a Whitefield Police Department form, threatened criminal enforcement under RSA 635:2, was served or enforced through law-enforcement authority, and was knowingly maintained by the Whitefield Defendants after Plaintiff demanded rescission and challenged the order's basis and legality.

Those allegations are sufficient at the pleading stage. A police department and police chief do not become immune from § 1983 scrutiny merely because a school administrator signed the exclusion order. The alleged injury was not only the school's internal access decision; it was a police-backed exclusion from public school property under threat of arrest. The Whitefield Defendants' role in communicating, enforcing, maintaining, or threatening criminal consequences is therefore part of the deprivation alleged.

The Whitefield Defendants also ask the Court to treat their enforcement role as categorically lawful because police officers may enforce criminal-trespass law. That argument assumes the validity of the underlying exclusion and ignores Plaintiff's allegations that the order lacked notice, stated reasons, policy authority, and constitutionally adequate process, and that the Whitefield Defendants knew or were placed on notice of those defects. At Rule 12, the Court may not resolve whether the Whitefield Defendants reasonably treated the order as valid, whether their

involvement was ministerial or participatory, or whether their continued enforcement after notice was objectively reasonable.

Nor is Chief Hodgdon's alleged role limited to a neutral warning. The Second Amended Complaint alleges that Chief Hodgdon was copied on Plaintiff's October 20, 2025 sworn communication concerning the school's crosswalk practice and related law-enforcement conduct, that the order was issued days later on a Whitefield Police Department form, and that the Whitefield Defendants warned Plaintiff that presence on school property could result in arrest. Those allegations, combined with the alleged timing and police-school coordination, plausibly support causation and personal involvement at the pleading stage.

The selected administrative-hearing excerpts further illustrate why dismissal is inappropriate. They reflect, for limited Rule 12 purposes, that the decision was described as a group or **team decision** involving law enforcement and school officials, including Officer Laska. Plaintiff does not ask the Court to resolve the truth of that testimony now. The point is narrower: Defendants' attempt to portray the Whitefield Defendants as passive, detached, and legally irrelevant depends on disputed factual characterizations inappropriate for dismissal on the pleadings.

The official-capacity claim against Chief Hodgdon may overlap with the claim against the Town. To the extent the Court deems the official-capacity claim against Chief Hodgdon duplicative of the Town claim, Plaintiff does not object to treating that claim as merged with the municipal claim against the Town. That does not support dismissal of the individual-capacity claim against Chief Hodgdon or the Monell claim against the Town. At this stage, the Second Amended Complaint plausibly alleges that the Town, through its Police Department and final law-enforcement officials, participated in or knowingly maintained a police-backed exclusion that caused Plaintiff's injury.

G. **Count VI Should Not Be Dismissed With Prejudice at the Pleading Stage**

The School District Defendants argue that Count VI is barred by IDEA exhaustion. Fry v. Napoleon Community Schools, 580 U.S. 154 (2017), instructs courts to look to the gravamen of the complaint, not its label, in determining whether exhaustion applies, and Fry itself recognizes that a plaintiff need not exhaust where the gravamen of the claim is not the denial of a FAPE. Count VI, as pled, does not seek relief for the denial of a free appropriate public education; it seeks relief for interference with Plaintiff's participation rights as a parent, arising from a blanket exclusion order that was not directed at, and did not purport to regulate, his daughter's IEP process at all. Second Am. Compl. ¶ 294. The order's interference with IEP-related participation is a downstream consequence of a general-access exclusion order issued under Policy KFA, a District-wide policy of general application, not an IDEA-specific procedural mechanism, not a dispute about the adequacy or content of any IEP, evaluation, or placement decision.

In any event, exhaustion is excused where pursuing administrative remedies would be futile or inadequate. Plaintiff already sought and was denied a hearing under Ed 204.01 specifically challenging the basis for the exclusion order, Second Am. Compl. ¶¶ 129-33, and the School Board ultimately did convene an extensive hearing on May 14, 2026, and issued a written decision on May 29, 2026, declining to disturb the order. Requiring Plaintiff to separately initiate and exhaust an IDEA due-process complaint over the same underlying exclusion order, which the District's own administrative process has already substantively addressed, would serve none of the purposes exhaustion is meant to serve. It would not develop a factual record the District does not already possess, and it would not allow the agency to apply IDEA-specific expertise to a dispute that is fundamentally about the validity and consequences of a general visitor-exclusion order.

To the extent the Court concludes that Plaintiff's IDEA allegations are not independently actionable without additional exhaustion, Plaintiff respectfully requests that the Court dismiss

Count VI without prejudice only, or alternatively treat the allegations as factual context supporting Plaintiff's due-process and retaliation claims. The child-related consequences of the exclusion order remain relevant even if the Court concludes that the IDEA count itself requires further administrative exhaustion. Plaintiff does not contend that Count VI is directed against the Whitefield Defendants in the same manner as it is directed against the District; to the extent the Whitefield Defendants seek dismissal of an IDEA claim not asserted against them, such dismissal would not affect the claims against them for due process, retaliation, equal protection, Monell liability, or declaratory relief.

### H. Count VII Is Not Moot, and Even If Prospective Relief Were Narrowed, Plaintiff's Damages Claims Are Unaffected

Defendants' mootness argument does not carry their heavy burden under Friends of the Earth. 528 U.S. at 189. The rescission on which Defendants rely occurred on August 18, 2026, after the Court's August 14, 2026 order approving the Report and Recommendation and directing Plaintiff to file the Second Amended Complaint, and mere days before Defendants' response deadlines. (Ex. A to Doc. 35.) This timing supports a reasonable inference that the rescission was a litigation-driven response rather than an independent, good-faith reassessment untethered to this lawsuit; exactly the circumstance in which courts decline to find mootness on voluntary cessation grounds, because a defendant who rescinds under litigation pressure remains free to reinstate the challenged policy once the case is dismissed. Laidlaw, 528 U.S. at 189-91.

Defendants emphasize that Superintendent Anastasia has left the District, but that fact does not establish mootness. The challenged authority to issue exclusion orders under Policy KFA now rests with a successor administrator operating under the same policy Plaintiff alleges was misapplied against him, with no order from this Court establishing that the policy was unlawfully applied or cannot be applied the same way again.

Nothing in the rescission letter disclaims the District's authority to issue a similar order in the future or acknowledges that the original order was unlawful; it simply states that the Board authorized rescission, with no reasoning given. That falls well short of the absolutely clear showing Laidlaw requires.

Finally, even if the Court were to find the request for prospective injunctive relief moot, Plaintiff's claims for compensatory, nominal, and punitive damages arising from the many months during which the order was in force remain fully live and are entirely unaffected by the August 2026 rescission.

A defendant's voluntary cessation of ongoing conduct does not moot a plaintiff's claim for damages arising from that conduct's past enforcement. Count VII should therefore, at most, be dismissed as to prospective relief only, without any effect on the remaining counts.

**I. <u>Qualified Immunity Does Not Warrant Dismissal at the Pleading Stage</u>**

Qualified immunity turns on whether existing precedent placed the constitutional question beyond debate at the time of the challenged conduct. *Mullenix v. Luna, 577 U.S. 7, 12 (2015)*. It has long been clearly established that the Due Process Clause requires, at minimum, some form of notice and an opportunity to be heard before the state deprives an individual of a protected liberty or property interest, and that the adequacy of some kind of hearing is assessed against the nature of the interest and the severity of the deprivation. *See Goss v. Lopez, 419 U.S. 565, 579 (1975); Mathews v. Eldridge, 424 U.S. 319, 333 (1976).*

Plaintiff alleges that Superintendent Anastasia issued a police-enforced exclusion order affecting Plaintiff's access to his daughter's school with no notice, no explanation, and no opportunity to be heard of any kind, not a deficient process, but the total absence of process. Second Am. Compl. ¶¶ 74-79. Taking that allegation as true, as the Court must at this stage, a reasonable school administrator would have understood that issuing an individualized police-

enforced exclusion order with zero process, directed at a specific parent in the wake of that parent's protected complaints to outside agencies, risked violating clearly established due-process principles.

It was also clearly established that government officials may not retaliate against a citizen for protected speech, complaints, or petitions for redress. Plaintiff alleges that Superintendent Anastasia issued the challenged restriction shortly after Plaintiff's protected complaints to school officials and outside agencies, and that the later asserted reasons included videotaping, staff discomfort, and subjective staff concerns. At the pleading stage, qualified immunity cannot be resolved by accepting Defendants' non-retaliatory explanation as true.

Defendants' qualified-immunity argument also depends on treating Superintendent Anastasia's decision as an isolated, routine school-access judgment. The pleaded facts and the selected administrative-hearing materials, if judicially noticed or considered for the limited purpose identified above, support a different inference.

The no-trespass order was allegedly the product of a **team decision** involving school administrators <u>and law-enforcement personnel</u>. The Laska and Anastasia excerpts are relevant not to resolve disputed facts at Rule 12, but to show that Defendants' qualified-immunity argument depends on a disputed factual characterization of the decision-making process. (Exhibit AF.) Plaintiff alleges a police-involved, one-sided process based on secondhand or thirdhand information, shortly after protected complaints involving the school and Officer Laska. Qualified immunity should not be resolved by accepting Defendants' preferred factual narrative.

Nor can Defendants obtain qualified immunity by defining the right as unrestricted access to school property. The relevant right is more specific and more established: a parent should not be subjected to a police-enforced exclusionary order affecting parental participation and child-related access without notice, stated reasons, and an opportunity to be heard, particularly where

the restriction allegedly follows protected complaints and is based on one-sided, secondhand information.

The State Board Final Order is relevant for the limited purpose of showing that the no-trespass notice was treated administratively as requiring a hearing before the local board in compliance with state law. (Exhibit AB.) That is enough to defeat qualified immunity at the pleading stage, or at minimum to prevent dismissal based on Defendants' narrowed characterization of the right.

Chief Hodgdon likewise is not entitled to qualified immunity at the pleading stage. He argues, in substance, that he merely warned Plaintiff that a school-issued no-trespass order could be enforced under New Hampshire's criminal-trespass statute. That framing again depends on accepting Defendants' version of the facts. Plaintiff alleges more than a neutral warning about a facially valid order.

Plaintiff alleges that Chief Hodgdon and the Whitefield Defendants were placed on notice of Plaintiff's protected complaints and legal objections, that the challenged order issued shortly thereafter on a Whitefield Police Department form, that the restriction threatened criminal enforcement, and that the Whitefield Defendants knowingly enforced or maintained the order despite the alleged absence of notice, stated reasons, policy authority, or meaningful process.

On Plaintiff's pleaded facts, the qualified-immunity question depends on what Chief Hodgdon knew, what role the Whitefield Police Department played, whether the enforcement threat was merely ministerial or part of a coordinated retaliatory course of conduct, and whether it was objectively reasonable to continue enforcing the order after Plaintiff placed Defendants on notice of its alleged defects.

Those factual questions cannot be resolved against Plaintiff on Rule 12(b)(6). Whether Superintendent Anastasia or Chief Hodgdon ultimately satisfies the qualified-immunity standard

on a fuller record is a question this Court need not, and on the current pleadings should not, resolve. See *Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010)* (qualified immunity may be resolved at the pleading stage only where the complaint itself establishes the defense; it does not do so here).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants Marion Anastasia and White Mountains Regional School District (SAU 36)'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 35), deny Defendants Town of Whitefield, Whitefield Police Department, and Chief Maxwell Hodgdon's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 36), and grant such further relief as the Court deems just. In the alternative, if the Court finds any count deficient, Plaintiff respectfully requests leave to amend as to that count rather than dismissal with prejudice.

Respectfully submitted,

/s/ Joseph J. Barton__________ Dated: September 3, 2026

JOSEPH J. BARTON, Pro Se
120 Cottage Street, Suite 1
Littleton, NH 03561
(603) 969-2706
joseph.barton@gc.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Consolidated Objection to Defendants' Motions to Dismiss was served via the Court's CM/ECF system upon all counsel of record.

/s/ Joseph J. Barton__________ Dated: September 3, 2026

JOSEPH J. BARTON, Pro Se

## EXHIBIT LIST

| | |
|---|---|
| EXHIBIT AB | March 19, 2026 State Board Final Order |
| EXHIBIT AE | May 29, 2026 Board Decision Letter |
| EXHIBIT AF | Selected Transcript Excerpts: Laska and Anastasia |
| EXHIBIT AG | Selected Transcript Excerpts: Plumley, Dubreuil, (Hearsay, Sequestration, Traffic-Control Evidence) |
| EXHIBIT AH | Selected Transcript Excerpts: (Gorrow Role Confusion / Board Neutrality) |